*803
 
 Opinion
 

 DELUCCHI, J.
 
 *
 

 The People appeal from an order of the superior court granting a writ of habeas corpus upon a determination that “the prospective limitation of good time and participation credits in the Determinate Sentencing Act is an invalid denial of equal protection as to petitioner,” Stinnette.
 

 At pertinent times, Don Roberto Stinnette has been confined to state prison under a sentence imposed in 1974 after his conviction of (1) assault with a deadly weapon and (2) having used a firearm in the commission of that offense. In 1977, the Community Release Board (hereinafter CRB) calculated his term of imprisonment under the Determinate Sentencing Act (hereinafter DSA) which became operative on July 1, 1977.
 
 [1]
 
 Thereafter, respondent petitioned for a writ of habeas corpus, contending inter alia that the nonretroactivity of certain good behavior and participation credit statutes under the DSA constitute a denial of equal protection in violation of the Fourteenth Amendment to the United States Constitution.
 

 After a hearing, the trial court found such prospective limitations to be an invalid denial of equal protection and directed the CRB to ascertain credit due respondent pursuant to said ruling. Appellant moved to stay execution of the order; the motion was denied. Notice of appeal was timely. Subsequently, this court granted appellant’s application for an order staying execution of the trial court’s order pending appeal. Prior to resolution of this case on appeal, respondent was released on parole.
 

 A. Although technically moot, should this case be decided on its merits?
 

 Respondent was released on parole on June 27, 1978. Since he can no longer be benefitted by good behavior or participation credits, the legal question of their retroactive availability is moot as to him.
 

 
 *804
 
 When a case presents questions of general public interest that are likely to recur, the court may render a decision on the merits even though the issue has become moot as to the particular litigant involved.
 
 (In re Walters
 
 (1975) 15 Cal.3d 738, 744 [126 Cal.Rptr. 239, 543 P.2d 607];
 
 In re Law
 
 (1973) 10 Cal.3d 21, 23 [109 Cal.Rptr. 573, 513 P.2d 621].) The retroactivity of the credit statutes at issue in the present case is a question of general public interest which is likely to recur. Consequently, mootness does not prevent the resolution of the substantial legal questions presented.
 

 B. Did the trial court err in holding that the nonretroactivity of the good behavior and participation credit statutes violates equal protection?
 

 The DSA contains provisions under which prisoners may receive credit for good behavior or participation in certain programs.
 
 [2]
 
 The maximum credit available is a four-month reduction of sentence for every eight months served: three months for forbearance from proscribed activities and one month for participation in educational, vocational or other prison programs. (§ 2931, subds. (b), (c).) Denial of this credit must be preceded by a hearing. (§ 2932.)
 

 For prisoners such as respondent who were originally sentenced under the ISL, such credit is available for reduction of their sentence remaining
 
 *805
 
 after July 1, 1977.
 
 [3]
 
 Thus, the entire sentence of a prisoner who began serving time on July 1, 1977, or thereafter may be reduced by one-third, while prisoners who began serving their sentence before that date may only earn one-third reductions of that part of their sentences still to be served after July 1, 1977.
 

 The Attorney General argues that it is not a denial of equal protection to refuse to apply the credit provision in question retroactively. We agree.
 

 The credit provisions authorize lessening the determinate term of imprisonment to be served as punishment for a particular offense, and it has been held that it is not a denial of equal protection for the Legislature to specify that such punishment-lessening statutes are prospective only.
 
 (People
 
 v.
 
 Aranda
 
 (1965) 63 Cal.2d 518, 531-532 [47 Cal.Rptr. 353, 407 P.2d 265].)
 

 The equal protection standard employed where there are no “suspect classifications” ’ ” or classifications impinging upon “ ‘ “fundamental interests” ’ ” is the “rational basis” test. This test invests the questioned legislation with a presumption of constitutionality and requires merely that the distinction drawn by a challenged statute bears some rational relationship to a conceivable legitimate state purpose. (See
 
 Serrano
 
 v.
 
 Priest
 
 (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241];
 
 McGinnis
 
 v.
 
 Royster
 
 (1973) 410 U.S. 263, 270 [35 L.Ed.2d 282, 288, 93 S.Ct. 1055].)
 

 We find this standard applicable in the present case. The classification does not involve any “suspect” categories such as race, ancestry or national origin, nor does it encroach upon any fundamental rights.
 
 [4]
 

 
 *806
 
 In
 
 In re Moreno
 
 (1976) 58 Cal.App.3d 740 [130 Cal.Rptr. 78], the Court of Appeal denied a prisoner’s petition for habeas corpus, holding that the petitioner was not entitled to the benefit of an amendment mitigating punishment that became effective after the judgment convicting petitioner had become final. The court stated at page 743: (5) “In the context of equal protection, ‘[a] refusal to apply a statute retroactively does not violate the Fourteenth Amendment.’
 
 (People
 
 v.
 
 Aranda
 
 (1965) 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265].) Equal protection is not denied where an amendatory statute reducing a penalty is not applied to persons whose convictions were final before the effective date of the ameliorative amendment.
 
 (Jones
 
 v.
 
 Cupp
 
 (9th Cir. 1971) 452 F.2d 1091.) The only requirement is that ‘classifications between those to whom the state accords and withholds substantial benefits must be reasonably related to a legitimate public purpose.’
 
 (In re Kapperman, supra,
 
 11 Cal.3d at p. 545; accord,
 
 McGinnis
 
 v.
 
 Royster
 
 (1973) 410 U.S. 263, 270 [35 L.Ed.2d 282, 288-289, 93 S.Ct. 1055].)”
 

 What is the public purpose here? It is the desirable and legitimate purpose of motivating good conduct among prisoners so as to maintain discipline and minimize threats to prison security. Reason dictates that it is impossible to influence behavior after it has occurred. The classification involved is reasonable, and no equal protection violation is indicated.
 

 C. Did this court err in granting the stay of execution of the trial court’s order?
 

 By an order filed on May 15, 1978, this court stayed execution of the trial court’s order pending appeal. This court’s order, made pursuant to section 1506,
 
 [5]
 
 contained the following statement: “Since said [trial court] order has the effect of directing that petitioner and respondent be released on parole, it is
 
 not an order granting a discharge or release from custody
 
 and therefore cannot serve as a basis for bail or other conditional form of release.” (Italics added.)
 

 
 *807
 
 Respondent contends that the trial court’s order, which had the effect of granting him release on parole, is an order granting his “discharge or release” within the meaning of section 1506 (see fn. 5,
 
 ante),
 
 and therefore the stay of execution was improper.
 

 The Attorney General argues that, under section 1506, when relief
 
 “other than
 
 a discharge or a release
 
 from custody
 
 is granted a stay of execution is permissible. (Original italics.) The language of section 1506 supports this interpretation. (See fn. 5,
 
 ante.)
 

 Prisoners on parole remain in the legal custody of the Department of Corrections. (§ 3056.) Therefore, release on parole is
 
 not
 
 release from custody, and a stay of execution is permissible. (See
 
 In re Fain
 
 (1976) 65 Cal.App.3d 376, 387, fn. 9 [135 Cal.Rptr. 543].) Since the trial court’s order in the present case would have had the effect of releasing respondent upon parole, it was within the power of this court to stay its execution. No error appears.
 

 The order is reversed.
 

 Caldecott, P. J., and Christian, J., concurred.
 

 Petitioner’s application for a hearing by the Supreme Court was denied August 1, 1979.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.
 

 [1]
 

 The DSA was enacted in 1976 (Stats. 1976, ch. 1139, p. 5061) to “become operative on July 1, 1977”
 
 (id.,
 
 § 351.5), and amended in 1977 (Stats. 1977, ch. 165, p. 631), also “operative on July 1, 1977.”
 
 (Id,
 
 § 100.) Effective that date, it repealed and superseded the Indeterminate Sentence Law (hereinafter ISL.) (See
 
 Way
 
 v.
 
 Superior Court
 
 (1977) 74 Cal.App.3d 165, 168-169 [141 Cal.Rptr. 383].)
 

 [2]
 

 All statutory references are to the Penal Code. Section 2930 reads as follows: “(a) The Department of Corrections shall inform every prisoner sentenced under Section 1170, not later than 14 days after reception in prison, of all applicable prison rules and regulations including the possibility of receiving a one-third reduction of the sentence for good behavior and participation. Within 14 days of the prisoner’s arrival at the institution to which the prisoner is ultimately assigned by the Department of Corrections, the prisoner shall be informed of the range of programs offered by that institution and their availability at that institution. The prisoner’s central file shall reflect compliance with the provisions of this section not later than 90 days after reception in prison. “(b) The department shall, within 90 days after July 1, 1977, inform every prisoner who committed a felony before'July I, 1977, and who would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, of all applicable prison rules and regulations, which have not previously been provided, of the range of programs offered and their availability, and the possibility of receiving a reduction for good behavior and participation of one-third of the prisoner’s remaining sentence after July 1, 1977. The inmate’s central file shall reflect compliance with the provisions of this section.” Section 2931. subdivision (a), provides in pertinent part: “In any case in which an inmate was sentenced to the state prison pursuant to Section 1170, or if he committed a felony before July 1, 1977, and he would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, the Department of Corrections shall have the authority to reduce the term prescribed under such section by one-third for good behavior and participation consistent with subdivision (d) of Section 1170.2. . . .”
 

 [3]
 

 Section 1170.2, subdivision (d), provides: “In the case of any prisoner who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1170 if the felony was committed on or after July 1, 1977, the good behavior and participation provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply from July 1, 1977, and thereafter."
 

 [4]
 

 The trial court concluded that the scheme abridged petitioner’s “fundamental interest” in freedom, thus requiring justification under the stricter “compelling state interest” test. This reasoning cannot be sustained. The challenged statute does not authorize confinement of a prisoner for a longer term than he otherwise would have served. (See, e.g..
 
 People
 
 v.
 
 Olivas
 
 (1976) 17 Cal.3d 236, 242 [131 Cal.Rptr. 55, 551 P.2d 375];
 
 In re Moye
 
 (1978) 22 Cal.3d 457, 465 [149 Cal.Rptr. 491, 584 P.2d 1097].) On the contrary, section 1170.2 specifically provides that in no case may a felon be confined for a period longer than he would have been under the old law (subd. (c)). Rather, the “good time credit”
 
 *806
 
 provision is wholly amelioratory, allowing both classes of prisoners an increased opportunity to shorten their time served. Therefore, the fundamental right to personal liberty is not violated, and the “rational basis” level of review is applicable.
 
 (In re Kapperman
 
 (1974) 11 Cal.3d 542, 545-546 [114 Cal.Rptr. 97, 522 P.2d 657];
 
 McGinnis
 
 v.
 
 Rovster,
 
 supra, 410 U.S. 263 at pp. 268-270 [35 L.Ed.2d at pp. 287-289].)
 

 [5]
 

 Section 1506 provides: “An appeal may be taken to the court of appeal by the people from a final order of a superior court made upon the return of a writ of habeas corpus discharging a defendant or otherwise granting all or any part of the relief sought, in all
 
 *807
 
 criminal cases, excepting criminal cases where judgment of death has been rendered, and in such cases to the Supreme Court; and in all criminal cases where an application for a writ of habeas corpus has been heard and determined in a court of appeal, either the defendant or the people may apply for a hearing in the Supreme Court. Such appeal shall be taken and such application for hearing in the Supreme Court shall be made in accordance with rules to be laid down by the Judicial Council.
 
 If the people appeal from an order granting the discharge or release of the defendant, or petition for hearing in either the court of appeal or the Supreme Court, the defendant shall be admitted to bail or released on his own recognizance or any other conditions which the court deems just and reasonable,
 
 subject to the same limitations, terms, and conditions which are applicable to, or may be imposed upon, a defendant who is awaiting trial.
 
 If the order grants relief other than a discharge or release from custody, the trial court or the court in which the appeal or petition for hearing is pending may,
 
 upon application by the people, in its discretion, and upon such conditions as it deems just
 
 stay the execution of the order pending final determination of the matter.”
 
 (Italics added.)