184 Cal.App.4th 481 (2010)
108 Cal.Rptr.3d 825
THE PEOPLE, Plaintiff and Respondent,
v.
ANTONIO PLASCENCIA PELAYO, Defendant and Appellant.
No. A123042.
Court of Appeals of California, First District, Division Five.
May 6, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*483 Syda Kosofsky, under appointment by the Supreme Court, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Gregg E. Zywicke and Marsha A. Dabiza, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
BRUINIERS, J. 
Appellant, Antonio Plascencia Pelayo, challenges his conviction and sentence for possession of methamphetamine for sale, possession of Ecstasy for sale, and evading a police officer. He challenges the validity of a search warrant for his residence, which was based primarily on information received from confidential informants and contained in a partially sealed affidavit. Pelayo also argues that Penal Code section 654 bars his punishment for possession of both methamphetamine and Ecstasy for sale. In the unpublished portion of this opinion, we find no error and affirm.
In a petition for rehearing, Pelayo argues that he is entitled to the benefit of 2009 amendments to Penal Code section 4019 which went into effect on January 25, 2010, pursuant to Senate Bill No. 18 (2009-2010 3d Ex. Sess.) (Senate Bill 18). These amendments increased the good conduct credits available to a defendant for presentence custody in a local detention facility. (Stats. 2009-2010, 3d Ex. Sess. 2009, ch. 28, § 50.) The amended statute became effective after Pelayo was sentenced, but Pelayo argues the amendments must be applied retroactively to all sentences not yet final on appeal. We granted the petition for rehearing and now conclude in the published *484 portion of this opinion that the amendments are retroactive and that Pelayo is accordingly entitled to recalculation of his presentence custody credits. We remand to the trial court to modify its sentencing order and the abstract of judgment to correctly reflect the credits to which Pelayo is entitled.

I. BACKGROUND[*]

II. DISCUSSION

A., B.[*]

C. Retroactivity of 2009 Amendments to Section 4019

We filed an opinion denying Pelayo's appeal on February 16, 2010. On February 22, 2010, before our opinion became final, Pelayo filed a petition for rehearing seeking the benefit of 2009 amendments to Penal Code section 4019 (all further code references are to the Penal Code unless otherwise indicated), which took effect in January 2010. Those amendments, with certain exceptions not applicable here, increase the good conduct credits a defendant can receive for presentence custody. Pelayo argues that the amendments, which became effective in January 2010, must be retroactively applied to his case under In re Estrada (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (Estrada). We granted the petition for rehearing, vacated our previously filed opinion, and ordered supplemental briefing from both parties.[4]
Since Pelayo's petition was filed, the issue of whether the recent amendments to section 4019 apply retroactively, or only prospectively, has been addressed in a number of published opinions. The Fifth District ruled in People v. Rodriguez (2010) 183 Cal.App.4th 1 (Rodriguez), that the amendments do not apply retroactively. The Third District, Second District (Divisions One and Six), and our First District (Division Two) have held that the amendments are retroactive. (People v. Brown (2010) 182 Cal.App.4th *485 [107 Cal.Rptr.3d 286] 1354 (Brown); People v. House (2010) 183 Cal.App.4th 1049; People v. Delgado (2010) 184 Cal.App.4th 271; People v. Landon (2010) 183 Cal.App.4th 1096 (Landon).) We join the majority view and also hold the amendments apply retroactively, entitling Pelayo to additional presentence custody credit.

1. Factual Background

Pelayo was sentenced October 21, 2008, to seven years in state prison. At sentencing, the trial court determined that Pelayo had spent 490 days in presentence custody and that he was therefore entitled to 244 days of credit under the then current version of section 4019, which provided for two days of credit for every four days of custody unless the inmate failed to perform assigned work or abide by the facility's reasonable rules and regulations. (Former § 4019, subds. (a)(4), (b), (c), (f), as amended by Stats. 1982, ch. 1234, § 7, p. 4553.) Effective January 2010, section 4019 provides for up to two days of credit for every two days of custody under the same conditions (with exceptions not relevant here). (§ 4019, subds. (a)(4), (b)(1), (c)(1), (f).) If sentenced under the current version of section 4019, Pelayo would be entitled to another 246 days of credit. (Ibid.)

2. Procedural Issues

An argument that an ameliorative amendment to a penal statute applies to a case not yet final on appeal is not subject to forfeiture or waiver. If retroactive, a sentence imposed under the former law is unauthorized, and an unauthorized sentence is subject to correction at any time, even on collateral review in a habeas corpus action. (People v. Nasalga (1996) 12 Cal.4th 784, 789 & fn. 4 [50 Cal.Rptr.2d 88, 910 P.2d 1380] (Nasalga) [amendment effective before sentencing but no objection was made in trial court; no waiver or forfeiture because sentence was unauthorized]; see also Estrada, supra, 63 Cal.2d at pp. 742, 750 [amendments effective after crime committed but before conviction and sentencing; issue raised in habeas petition seeking release on parole was cognizable because writ challenged unauthorized sentence].) In their supplemental brief, the People concede that Pelayo can raise this issue for the first time in a petition for rehearing and do not object to our deciding the petition on the merits. (See also People v. Acosta (1996) 48 Cal.App.4th 411, 427 [55 Cal.Rptr.2d 675] [§ 1237.1, which generally prohibits an appeal challenging the calculation of presentence custody credits unless the defendant has first raised the issue in the trial court, does not apply when other issues are litigated on appeal]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶¶ 12:25 to 12:26, p. 12-5 (rev. # 1, 2008) [jurisdictional issues are not forfeited because they were untimely *486 raised on appeal]; In re Harris (1993) 5 Cal.4th 813, 842 [21 Cal.Rptr.2d 373, 855 P.2d 391] [imposition of unauthorized sentence is act in excess of court's jurisdiction].)

3. Retroactivity of Penal Statutes in General

(1) Section 3 provides that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared." (§ 3.) "That section simply embodies the general rule of construction ... that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively." (Estrada, supra, 63 Cal.2d at p. 746.) The rule, however, "is not a straitjacket" and "should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent" even if the Legislature has not expressly stated that a statute should apply retroactively. (Ibid.) In Estrada, the court considered the particular circumstance of a penal statute that lessens the punishment for a crime but does not include an express statement that the statute was to apply retroactively. (Id. at pp. 743-744.) In that situation, the court concluded, the inevitable inference is "that the Legislature must have intended, and by necessary implication provided, that the amendatory statute should prevail. When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.... This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology," which instruct that punishment is directed toward deterrence, incapacitation, and rehabilitation, but not "punishment for its own sake." (Id. at pp. 744-745.) Accordingly, "where the amendatory statute mitigates punishment and there is no saving clause [requiring only prospective effect], the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (Id. at p. 748.) That is, it will apply to all judgments of conviction that are not yet final on direct review. (Id. at p. 744.)
(2) In 1996, the Supreme Court expressly reaffirmed the Estrada rule. (Nasalga, supra, 12 Cal.4th at p. 792, fn. 7.) In a prior case, the court had suggested that the rationale of Estrada had been undermined by further developments in penology in this state. (In re Pedro T. (1994) 8 Cal.4th 1041, 1045, fn. 1 [36 Cal.Rptr.2d 74, 884 P.2d 1022], citing § 1170, subd. (a)(1) ["Legislature finds and declares that the purpose of imprisonment for crime is punishment."].) In Nasalga, however, the court rejected an invitation to *487 reconsider Estrada in light of this change in penological theory. "In the 31 years since this court decided Estrada, ... the Legislature has taken no action, as it easily could have done, to abrogate Estrada."[5] (Nasalga, at p. 792, fn. 7.) In short, in Nasalga the court reaffirmed the Estrada rule on the ground of legislative acquiescence, regardless of the continuing persuasiveness of the Estrada rationale. (Cf. People v. Meloney (2003) 30 Cal.4th 1145, 1161 [135 Cal.Rptr.2d 602, 70 P.3d 1023] (Meloney) ["`"[when] a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it"'"].) After Nasalga, it is no longer open to debate whether the fact that the Legislature enacted a statute that mitigates punishment supports an inference that the Legislature intended the statute to apply retroactively. (Nasalga, at p. 792, fn. 7.)
(3) In light of Estrada and Nasalga, we agree with Brown's statement that there are "two alternate presumptions" that govern the question whether a penal amendment will operate retroactively: "If the amendment is a reduction in punishment, Estrada requires that we presume retroactive application, at least as to cases not yet final on the effective date. [Citation.] For all other amendments, section 3 requires that we presume prospective application. However, in either case, the presumption may be rebutted by evidence demonstrating a contrary intent." (Brown, supra, 182 Cal.App.4th at p. 1361.)

4. Retroactivity of Statutes Increasing Custody Credits

In at least four prior decisions long predating the current amendments, courts of appeal have held that the Estrada rule applied to amendments increasing the credits a defendant could receive for presentence custody. (People v. Hunter (1977) 68 Cal.App.3d 389, 391-393 [137 Cal.Rptr. 299] (Hunter); People v. Sandoval (1977) 70 Cal.App.3d 73, 87-88 [138 Cal.Rptr. 609] (Sandoval); People v. Doganiere (1978) 86 Cal.App.3d 237, 238-240 [150 Cal.Rptr. 61] (Doganiere); People v. Smith (1979) 98 Cal.App.3d 793, 798-799 [159 Cal.Rptr. 749] (Smith).) As far as we are aware, no published decisions have held to the contrary. In Hunter, the issue was whether amendments to section 2900.5, which allowed credit for actual time spent in presentence custody against sentences imposed as a condition of probation, applied retroactively to probationary sentences imposed prior to the effective date of the amendments. (Hunter, at p. 391.) Following Estrada, the court *488 held the amendments applied retroactively to judgments that were not yet final on the effective date of the new law. (Ibid.) Sandoval agreed with and followed Hunter on the same issue. (Sandoval, at pp. 87-88.)
In Doganiere, the issue was the retroactivity of amendments to section 2900.5 that authorized conduct credit (pursuant to § 4019) for time that had been served in jail as a condition of probation against a sentence later imposed after a violation of probation. (Doganiere, supra, 86 Cal.App.3d at pp. 238-239.) Following Estrada and Hunter, the court held the amendments were retroactive. (Id. at pp. 239-240.) In Smith, the court followed Estrada and Doganiere and held that 1979 amendments to section 4019 applied retroactively. (Smith, supra, 98 Cal.App.3d at p. 799.) In Doganiere, the court specifically rejected an argument that the amendments should not apply retroactively because conduct credits were an incentive for future inmate behavior, a goal that could only be accomplished through prospective application. (Doganiere, at pp. 239-240.) "It appears to us that in applying the principles of Estrada, as indeed we must, the Legislature simply intended to give credit for good behavior and in so doing, dangled a carrot over those who are serving time. It would appear to be fair, just and reasonable to give prisoner A, who has been a model prisoner and by reason thereof served only five months of his six-month sentence, credit for the full six months if we are going to give credit for the full six months to prisoner B, who is recalcitrant, hard-nosed, and spent his entire term violating the rules of the local county jail." (Ibid.) We note that Estrada itself implicitly rejected a similar argument made by the dissent in that case, that retroactive application of a lessened criminal penalty undermines the deterrent effect of penal statutes. (See Estrada, supra, 63 Cal.2d at p. 753 (dis. opn. of Burke, J.).) Doganiere concluded, "Under Estrada, it must be presumed that the Legislature thought the prior system of not allowing credit for good behavior was too severe." (Doganiere, at p. 240.) Again, under Nasalga, the legitimacy of that inference is no longer open to debate. (Nasalga, supra, 12 Cal.4th at p. 792, fn. 7.)
The People contend that the reasoning of Doganiere is unsound, since the public purpose of good conduct statutes is to provide effective incentives for good behavior, and that this purpose can only be furthered by prospective application of additional credits. "Reason dictates that it is impossible to influence behavior after it has occurred." (In re Stinnette (1979) 94 Cal.App.3d 800, 806 [155 Cal.Rptr. 912] (Stinnette); see also Rodriguez, supra, 183 Cal.App.4th at p. 8.) Stinnette considered an amendment to section 2931 under the Determinate Sentencing Act (DSA), which allowed prisoners to earn conduct credits but restricted application of the amendment to time served after the effective date. (Stinnette, supra, at pp. 803-804.) The issue was whether the express prospective application of the statute violated equal protection. (Id. at p. 804.) The court concluded that it did not because there was a rational basis for treating those who had already begun serving their *489 sentences differently from those who began serving their sentences after the effective date. (Id. at pp. 805-806.) Unlike Stinnette, the amendment to section 4019 at issue here does not specify the Legislature's intent regarding its retroactive or prospective application. We agree with our colleagues in Landon and Brown that Stinnette is not helpful in determining the Legislature's intent when amending section 4019. (Landon, supra, 183 Cal.App.4th at p. 1107; Brown, supra, 182 Cal.App.4th at p. 1362.)
The Legislature, which is presumed to have been aware of the Hunteri>/Doganiere case law, "has taken no action, as it easily could have done, to abrogate" these decisions in the more than 31 years since the last of them was decided. (Cf. Nasalga, supra, 12 Cal.4th at p. 792, fn. 7.) Moreover, the Legislature twice amended section 4019, in 1982 and 2009, without expressly providing that the amendments would apply prospectively only. (Stats. 1982, ch. 1234, § 7, p. 4553; Stats. 2009-2010, 3d Ex. Sess. 2009, ch. 28, § 50.) On these facts, we may infer that the Legislature has acquiesced in Doganiere. (See Meloney, supra, 30 Cal.4th at p. 1161.)

5. Legislative Intent in 2009 Amendments of Section 4019

As the People acknowledge, the Legislature, in enacting the amendments to section 4019, did not expressly declare its intent in doing so. Pelayo asserts that an intent to retroactively apply the amendments can be discerned from the statement that Senate Bill 18 was enacted to "address[] the fiscal emergency declared by the Governor" (Sen. Bill 18, § 62) and that earlier release of prisoners would foster that purpose. However, the legislative intent at issue "is not the motivation for the legislation" but rather "the Legislature's intent concerning whether the [enactment] should apply prospectively only." (Nasalga, supra, 12 Cal.4th at p. 795.) The Third Appellate District in Brown found that the statute's purpose of saving state funds by reducing prison population while at the same time minimizing security risk is at least as consistent with retroactive as with prospective application of the amendments to section 4019. (Brown, supra, 182 Cal.App.4th at pp. 1363-1364.) We agree.
Pelayo also contends that the express use of a saving clause in other statutes amended by the same legislation (Sen. Bill 18, § 41[6]; § 2933.3, subd. (d) [providing additional custody credits for prison inmate firefighting training or service only for those eligible after July 1, 2009]) compels a conclusion that the Legislature intended retroactivity for amended section 4019. The Legislature's inclusion of a saving clause in the amendment to *490 section 2933.3, but not in the amendments to section 4019, supports an inference that the Legislature had a different intent with respect to the retroactive or prospective application of the two provisions. (Cf. Fairbanks v. Superior Court (2009) 46 Cal.4th 56, 62 [92 Cal.Rptr.3d 279, 205 P.3d 201] ["use of differing language in otherwise parallel provisions supports an inference that a difference in meaning was intended"].) The People urge that we can divine a contrary legislative purpose for only prospective application from the fact that the amendment to section 2933.3, subdivision (d) was expressly made partially retroactive, and the Legislature failed to do so here. The Fifth Appellate District in Rodriguez agreed that the inclusion of an express provision for retroactive application in one instance and its absence from the section amending section 4019 undermines any inference of retroactive intent with respect to section 4019. (Rodriguez, supra, 183 Cal.App.4th at p. 3.) We think that the Legislature's use of the phrase "shall only apply" in amending section 2933.3 (italics added), however, suggests an intent to limit the provision's retroactive application, rather than extend the provision's otherwise prospective application retroactively, and respectfully disagree with the conclusion in Rodriguez.
Pelayo further argues that we can look to the Legislature's explicit recognition of inevitable delays in implementation of new custody credit calculations by the Department of Corrections and Rehabilitation (Sen. Bill 18, § 59) as evidence that the Legislature contemplated retroactive application of such credits. Section 59, an uncodified provision of Senate Bill 18, provides: "The Department of Corrections and Rehabilitation shall implement the changes made by this act regarding time credits in a reasonable time. However, in light of limited case management resources, it is expected that there will be some delays in determining the amount of additional time credits to be granted against inmate sentences resulting from the changes in law pursuant to this act. An inmate shall have no cause of action or claim for damages because of any additional time spent in custody due to reasonable delays in implementing the changes in the credit provisions of this act. However, to the extent that excess days in state prison due to delays in implementing this act are identified, they shall be considered as time spent on parole, if any parole period is applicable." (Stats. 2009-2010, 3d Ex. Sess. 2009, ch. 28, § 59.) The Third Appellate District in Brown found that, while ambiguous, this section does tend to support an inference that the Legislature intended the provisions affecting custody credits to have retroactive effect, and we concur. (Brown, supra, 182 Cal.App.4th at pp. 1364-1365; see also Landon, supra, 183 Cal.App.4th at p. 1108.)
(4) Ultimately, however, we need not attempt any delphic insights into legislative purpose to conclude that, in the absence of clear affirmative indications that the Legislature intended the amendments to section 4019 to have prospective application only, we must apply the Estrada and Doganiere *491 presumption that the amendments are retroactive as to all sentences not yet final on direct appeal at the time the amendments went into effect. We find no clear expression of such an intent and thus hold that the amendments must be applied retroactively.

6. Conclusion

(5) We hold that Pelayo is entitled to the benefits of the 2009 amendments to section 4019. Because we reach this conclusion, we have no need to address the argument that equal protection rights would be violated if the amendments were given only prospective application.

III. DISPOSITION
The judgment is reversed as to the calculation of presentence custody credits only. On remand, the trial court shall revise its sentencing order and the abstract of judgment to reflect that Pelayo earned 980 days of presentence custody credits pursuant to section 4019 and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.
Jones, P. J., and Simons, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II.A., II.B.
[*] See footnote, ante, page 481.
[4] On March 1, 2010, we asked the People to file a response to Pelayo's petition, and asked Pelayo to brief a procedural issue. After receiving the parties' briefs in response to this order, we requested supplemental briefing on a recently published decision and the legislative history of the amendments to section 4019. Pelayo filed a timely supplemental brief in response to this order. The People received leave to file a late opposition.
[5] Notably, during that 31-year period the Supreme Court had repeatedly followed and applied Estrada. (See, e.g., People v. Francis (1969) 71 Cal.2d 66, 75-76; [75 Cal.Rptr. 199, 450 P.2d 591]; People v. Rossi (1976) 18 Cal.3d 295, 298-300 [134 Cal.Rptr. 64, 555 P.2d 1313]; People v. Chapman (1978) 21 Cal.3d 124, 126-127 [145 Cal.Rptr. 672, 577 P.2d 1012]; People v. Babylon (1985) 39 Cal.3d 719, 721-722 [216 Cal.Rptr. 123, 702 P.2d 205]; Tapia v. Superior Court (1991) 53 Cal.3d 282, 300-301 [279 Cal.Rptr. 592, 807 P.2d 434].)
[6] "The credits authorized in subdivisions (b) and (c) shall only apply to inmates who are eligible after July 1, 2009." (Stats. 2009-2010, 3d Ex. Sess. 2009, ch. 28, § 41.)