Filed 7/11/13  P. v. Richardson CA5
Received for posting 7/15/13

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F065260 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. F11905248) |
| FRANK EARL RICHARDSON, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Thomas S. Singman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Wiseman, Acting P.J., Poochigian, J. and Franson, J.

Appellant, Frank Earl Richardson, pled no contest to two counts of dissuading a witness by force or threat (Pen. Code, § 136.1, subd. (c)(1))[1] and individual counts of making a criminal threat (§ 422) and misdemeanor battery (§ 242). In addition, appellant admitted allegations that he had suffered three "strikes"[2] and had served three separate prison terms for prior felony convictions (§ 667.5, subd. (b)). Subsequently, the parties and the court agreed that one of the purported strikes was, in fact, not a strike, and the court struck another strike (§ 1385), struck the three prior prison term enhancements, imposed a prison term of 10 years, and awarded appellant 448 days of presentence custody credits, consisting of 292 days of actual time credits and 156 days of conduct credits.

Appellant argues the court erred in failing to award him presentence conduct credits under the one-for-one credit scheme of the current iteration of section 4019. We affirm.

***Statutory Background***

Under section 2900.5, a person sentenced to state prison for criminal conduct is entitled to presentence custody credits for all days spent in custody before sentencing. (§ 2900.5, subd. (a).) In addition, section 4019 provides for what are commonly called conduct credits, i.e., credits against a prison sentence for willingness to perform assigned labor (§ 4019, subd. (b)) and compliance with rules and regulations (§ 4019, subd. (c)). (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.)

In the past few years, section 4019 has undergone numerous amendments, of which the following concern us here. First, effective September 28, 2010, the Legislature amended section 4019 to provide, for defendants confined for crimes committed on or

---

[1]    All statutory references are to the Penal Code.

[2]    We use the term "strike" as a synonym for "prior felony conviction" within the meaning of the "three strikes" law (§§ 667, subds. (b)-(i); 1170.12), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

after that date, that six days would be deemed to have been served for every four days spent in actual custody—a ratio of one day of conduct credit for every two days served (one-for-two credits). (Stats. 2010, ch. 426, § 2.) We refer to this version of section 4019 as former section 4019.

Next, a series of amendments in 2011, which began with Assembly Bill No. 109 (2011-2012 Reg. Sess.), enacted as part of the so-called criminal realignment legislation, culminated in the current version of section 4019, which provides that defendants can receive one-for-one credits, i.e., two days of conduct credit for every two days served in local custody.[3] (§ 4019, subds. (b), (c), as amended by Stats. 2011, ch. 15, § 482; see *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 49-50 (*Rajanayagam*).) The new legislation expressly provided that this change "shall apply prospectively and shall apply to prisoners who are confined to a county jail ... for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).) We sometimes refer to the current version of section 4019 as the October 1, 2011, amendment.

*Appellant's Presentence Confinement and the Trial Court's Credits Calculation*

Appellant was arrested on September 9, 2011, and was confined in county jail from that date through the day he was sentenced, June 26, 2012. For that entire period, the trial court calculated appellant's conduct credits under the two-for-one scheme of former section 4019.

---

[3] Under Section 2933.1, the effective date of which precedes former section 4019, as well as the current version of section 4019, "[n]otwithstanding Section 4019 or any other provision of law," persons convicted of a felony classified as "violent" under section 667.5, subdivision (c) may earn credit against their term of no more than 15 percent. (§ 2933.1, subds. (a), (c); *In re Pope* (2010) 50 Cal.4th 777, 779.) As the parties do not dispute, none of the instant offenses are a section 667.5, subdivision (c) violent felony, and therefore the section 2933.1 15 percent limitation is not implicated here.

*Contentions and Analysis*

Appellant argues that even though he committed the instant offenses prior to October 1, 2011, and the October 1, 2011, amendment expressly provides that its provisions "shall apply prospectively and shall apply to prisoners who are confined to a county jail ... for a crime committed on or after October 1, 2011," he is entitled to conduct credits under the more generous one-for-one scheme of the October 1, 2011, amendment for the portion of his presentence confinement served on and after October 1, 2011. He bases this claim on constitutional equal protection grounds and principles of statutory construction. In each instance, his claim fails.

### *Statutory Construction*

Appellant's statutory construction argument focuses on the second sentence of section 4019, subdivision (h): "Any days earned by a prisoner *prior* to October 1, 2011, shall be calculated at the rate required by the *prior* law." (Italics added.) Appellant argues: "This language strongly indicates an intention that days earned by a prisoner <u>after</u> October 1, 2011[,] ought to be calculated under the <u>current</u> law; that is, [the October 1, 2011, amendment]." We disagree.

After appellant filed his opening brief, this court, in *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*), held "as a matter of statutory construction" (*id*. at p. 1550) that because the October 1, 2011, amendment expressly specified that the changes applied prospectively only, the statute did not apply retroactively, i.e., to persons whose crimes were committed before October 1, 2011 (*id*. at pp. 1550-1551). Referring to the sentence in section 4019, subdivision (h) upon which appellant relies, this court explained: "The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits. So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas section 1170, subdivision (h), which sets out the

4

basic sentencing scheme under realignment, applies based on the date a defendant is sentenced." (*Id*. at p. 1553; accord, *Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 51-52.) Thus, under the October 1, 2011, amendment, a defendant who is sentenced for a crime committed before October 1, 2011, is not eligible to earn conduct credits under that amendment. The court here correctly calculated appellant's conduct credits under former section 4019.

### *Equal Protection*

Appellant argues that for persons in presentence custody after October 1, 2011, the October 1, 2011, amendment created "two classes of jail inmates: (1) those who are awarded additional conduct credits because they committed a crime on or after October 1, 2011; and (2) those who were not awarded additional conduct credits because they committed a crime before October 1, 2011." These two groups, he argues, are "similarly, if not identically situated" with respect to the purpose of conduct credits, which is to encourage good behavior by persons incarcerated prior to sentencing and to encourage such persons to participate in work and other rehabilitative activities. Further, appellant, a member of the second group, argues that under equal protection clauses of the California and United States Constitutions, the government must demonstrate there is a compelling interest for treating the two groups differently, and that there is no "rational basis," much less a compelling interest, for doing so. Therefore, appellant contends, the failure to award him one-for-one credits for the period of October 1, 2011, through June 26, 2012, the date of sentencing, violated his constitutional equal protection rights. We disagree.

"The Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution both prohibit the denial of equal protection of the laws. 'The equal protection guarantees of [both Constitutions] are substantially equivalent and analyzed in a similar fashion' [citation], and they

unquestionably apply to penal statutes [citation]." (*People v. Cruz* (2012) 207 Cal.App.4th 664, 674 (*Cruz*).)

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, "'[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner."' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged.""' (*People v. Brown* (2012) 54 Cal.4th 314, 328 (*Brown*).) "If the first prerequisite is satisfied, we proceed to judicial scrutiny of the classification." (*Rajanayagam, supra*, 211 Cal.App.4th at p. 53.) To determine the correct level of scrutiny to apply to a legislative classification, we apply the following principles:

"'[W]hen reviewing legislative classifications under the equal protection clauses of the California and United States Constitutions, the legislation under examination is generally clothed in a presumption of constitutionality. However, once it is determined that the classification scheme affects a fundamental interest or right, the burden shifts; thereafter the state must first establish that it has a compelling interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose. [Citations.]'" (*Cruz, supra*, 207 Cal.App.4th at p. 675, quoting *People v. Olivas* (1976) 17 Cal.3d 236, 251 (*Olivas*).) "By contrast, """'a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there are 'plausible reasons' for [the classification], 'our inquiry is at an end.'"""' [Citations.]'" (*Cruz*, at pp. 675-676, quoting *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200–1201.)

6

We assume without deciding, as appellant contends, that those who earn conduct credits at the enhanced rate because their crimes occurred on or after October 1, 2011, and those (like appellant) who do not earn conduct credits at the enhanced rate because their crimes occurred before that date are similarly situated for purposes of equal protection analysis. Accordingly, we turn now to the question of the appropriate level of scrutiny.[4]

Appellant argues that because conduct credits affect a defendant's time in custody, the legislative classification at issue here affects a fundamental interest, viz., personal liberty, and therefore the strict scrutiny standard applies. He relies, in part, on *Olivas*, *supra*, 17 Cal.3d 236, where the California Supreme Court declared: "[P]ersonal liberty

---

[4]     In *Brown*, *supra*, 54 Cal.4th 314, our Supreme Court rejected an equal protection challenge to the version of section 4019 that preceded former section 4019. In *Ellis*, *supra*, 207 Cal.App.4th 1546, as in the instant case, the defendant served a period of presentence confinement before, on and after October 1, 2011, and this court, stating, "We can find no reason *Brown's* conclusions and holding with respect to the [amendment before the court in *Brown*] should not apply with equal force to the October 1, 2011, amendment[,]" (*id.* at p. 1552) rejected the defendant's equal protection claim that he was entitled to enhanced credits under the October 1, 2011, amendment for the entire presentence confinement period, including the period on and after October 1, 2011. Appellant, however, argues *Brown* supports *his* position that the two groups he posits meet the "similarly situated" requirement, and the court in *Rajanayagam*, *supra*, 211 Cal.App.4th 42 reached the same conclusion, albeit, it appears, by a slightly different route. The *Rajanayagam* court addressed an equal protection challenge to the October 1, 2011, amendment, where, as in *Ellis* and the instant case, the confinement period straddled October 1, 2011, and the defendant effectively conceded he was not entitled to the portion of his presentence confinement that predated October 1, 2011. The court held the two groups in question—"(1) those defendants who are in jail on and/or after October 1, 2011, who committed an offense on or after October 1, 2011; and (2) those defendants who are in jail on and/or after October 1, 2011, who committed the same offense before October 1, 2011"—were "similarly situated for purposes of the October 1, 2011, amendment ...." (*Rajanayagam* at pp. 53, 55.) *Brown*, the court stated, "is inapposite on this point." (*Rajanayagam* at p. 54.) This court in *Ellis*, in finding *Brown* controlling, did not specifically address the *Rajanayagam* court's view of the *Brown* equal protection analysis as to confinement time on and after October 1, 2011. However, because we assume without deciding the two groups in question are similarly situated, we need not address these conflicting positions on the issue.

is a fundamental interest, second only to life itself, as an interest protected under both the California and United States Constitutions." (*Id*. at p. 251.) However, as this court noted in *Cruz*, *supra*, 207 Cal.App.4th 664: "As unambiguous as this statement is, determining which level of scrutiny applies is not always straightforward where a penal provision is claimed to touch upon a criminal offender's liberty interest. (See *People v. Applin* (1995) 40 Cal.App.4th 404, 409 … & cases cited.)" (*Id*. at p. 676, fn. omitted.) Thus, as appellant acknowledges, "courts have reached different conclusions about which test applies to incongruities resulting from statutes involving time credits or other elements of criminal sentences." For example, in *People v. Saffell* (1979) 25 Cal.3d 223, this state's high court applied the compelling state interest test to a statutory scheme that precluded persons committed to state hospitals for treatment as mentally disordered sex offenders from earning custody credits that were available to inmates of correctional facilities, whereas in *In re Kapperman* (1974) 11 Cal.3d 542 (*Kapperman*), the court applied the rational basis test to an equal protection challenge to a provision (then new section 2900.5) that made actual-time custody credits prospective, applying only to persons delivered to the Department of Corrections after the effective date of the legislation.

We find instructive *In re Stinnette* (1979) 94 Cal.App.3d 800. In that case, the court held a portion of the Determinate Sentencing Act that added provisions that allowed prisoners to earn conduct credits in prison, and by its express terms provided that such credits were to be awarded prospectively only, did not violate constitutional equal protection guarantees. The court held the trial court erred in concluding that statutory scheme abridged the petitioner's "'fundamental interest' in freedom." (*Stinnette,* at p. 805, fn. 4.) The court explained: "The challenged statute does not authorize confinement of a prisoner for a longer term than he otherwise would have served. [Citations.] ... [T]he 'good time credit' provision is wholly amelioratory, allowing both classes of prisoners an increased opportunity to shorten their time served. Therefore, the fundamental right to personal liberty is not violated, and the 'rational basis' level of

8

review is applicable." (*Ibid.*) Section 4019 is the presentence analog to the post-sentence credits scheme before the court in *Stinnette*. It too is amelioratory. Accordingly, we conclude the October 1, 2011, amendment does not affect a fundamental right, and therefore we review appellant's equal protection challenge under the rational basis standard.

Appellant argues "there can be no rational basis for granting more conduct credits to prisoners serving presentence time for crimes committed after October 1, 2011[,] than prisoners also serving time after that date, but whose crimes were committed earlier" because "the recognized goal of the conduct-credit laws is to provide incentives to prisoners … while serving presentence time" and "[s]ince both groups are in custody at the same time, for the same crime, any incentives to behave apply equally to both groups." We disagree. On this point we agree with the *Rajanayagam* court's analysis, from which we quote at length.

> "It is undisputed the purpose of section 4019's conduct credits generally is to affect inmates' behavior by providing them with incentives to work and behave. (*Brown*, *supra*, 54 Cal.4th at pp. 327–329.) But that was not the purpose of Assembly Bill No. 109, which was part of the Realignment Act…. [T]he Legislature's stated purpose for the Realignment Act 'is to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.' [Citation.] Section 17.5, subdivision (a)(7), puts it succinctly: 'The purpose of justice reinvestment is to manage and allocate criminal justice populations more *cost-effectively*, generating savings that can be reinvested in evidence-based strategies that increase public safety while holding offenders accountable.' (Italics added.)" (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 54-55.)

Thus, we must determine whether the October 1, 2011, amendment to section 4019 awarding less credits to those defendants who committed their offenses before October 1, 2011, than those defendants who committed their offenses on or after October 1, 2011, "bears a rational relationship to the Legislature's legitimate state purpose of reducing costs." (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 55.) "We are mindful the rational relationship test is highly deferential. (*People v. Turnage* (2012) 55 Cal.4th 62,

9

77 ["[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends""].)

As did the court in *Rajanayagam*, "We conclude the classification in question does bear a rational relationship to cost savings." (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 55.) "Preliminarily, we note the California Supreme Court has stated equal protection of the laws does not forbid statutes and statutory amendments to have a beginning and to discriminate between rights of an earlier and later time. (*People v. Floyd* (2003) 31 Cal.4th 179, 188 … (*Floyd* ) ['[d]efendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense'].) Although *Floyd* concerned punishment, we discern no basis for concluding differently here." (*Ibid.*; accord, *People v. Kennedy* (2012) 209 Cal.App.4th 385, 398-399 (*Kennedy*) ["Although [the 2011 amendment] does not ameliorate punishment for a particular offense, it does, in effect, ameliorate punishment for all offenses committed after a particular date"].)

"More importantly, in choosing October 1, 2011, as the effective date of Assembly Bill No. 109, the Legislature took a measured approach and balanced the goal of cost savings against public safety. The effective date was a legislative determination that its stated goal of reducing corrections costs was best served by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011. To be sure, awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. (*Floyd*, *supra*, 31 Cal.4th at p. 190 [Legislature's public purpose predominate

10

consideration].) Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 55-56; accord, *Kennedy*, *supra*, 209 Cal.App.4th at p. 399 [in making changes to custody credits earning rates "the Legislature has tried to strike a delicate balance between reducing the prison population during the state's fiscal emergency and protecting public safety," and "[a]lthough such an effort may have resulted in comparable groups obtaining different credit earning results, under the rational relationship test, the Legislature is permitted to engage in piecemeal approaches to statutory schemes addressing social ills and funding services to see what works and what does not"].)

In addition, we find a second rational basis for the classification at issue. On this point we follow the reasoning and result in *Kennedy*, *supra*, 209 Cal.App.4th 385. The court's analysis there began with *Kapperman*, *supra*, 11 Cal.3d 542. The court noted that "our Supreme Court ... acknowledged 'statutes lessening the *punishment* for a particular offense' may be made prospective only without offending equal protection principles. (*Kapperman*, *supra*, 11 Cal.3d. at p. 546.) In *Kapperman*, the court wrote that the Legislature may rationally adopt such an approach, 'to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' (*Ibid.*)." (*Kennedy*, at p. 398, fn. omitted.)

The *Kennedy* court then discussed *Floyd*, *supra,* 31 Cal.4th 179: "In [that case], the defendant sought to invalidate a provision of Proposition 36 barring retroactive application of its provisions for diversion of nonviolent drug offenders. [Citation.] The court reiterated that the Legislature may preserve the penalties for existing offenses while ameliorating punishment for future offenders in order to '"assure that penal laws will

11

maintain their desired deterrent effect by carrying out the original prescribed punishment as written.'" [Citation.] The statute before the court came within this rationale because it 'lessen[ed] punishment for particular offenses.' [Citation.] As the *Floyd* court noted, "'[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." [Citation.]'" (*Kennedy*, *supra*, 209 Cal.App.4th at p. 398.)

Kennedy gleaned from *Kapperman* and *Floyd* the following: "[T]he rule ... is that a statute ameliorating punishment for particular offenses may be made prospective only without offending equal protection, because the Legislature will be supposed to have acted in order to optimize the deterrent effect of criminal penalties by deflecting any assumption by offenders that future acts of lenity will necessarily benefit them." (*Kennedy*, *supra*, 209 Cal.App.4th at p. 398.) The court acknowledged that the October 1, 2011, amendment "does not ameliorate punishment for a particular offense," but, the court stated, "it does, in effect, ameliorate punishment for all offenses committed after a particular date." (*Id*. at pp. 398-399.) Accordingly, the court concluded: "By parity of reasoning to the rule acknowledged by both the *Kapperman* and *Floyd* courts, the Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed before that date. To reward appellant with the enhanced credits of the [October] 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakens the deterrent effect of the law as it stood when appellant committed his crimes. We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed." (*Id*. at p. 399.)

Appellant urges that we not follow *Kennedy*. As indicated earlier, we find *Kennedy* well-reasoned and persuasive. The rationale articulated above constitutes a

12

second rational basis for the legislative classification at issue.  Calculating appellant's conduct credits under former section 4019, rather than under the October 1, 2011, amendment, did not violate appellant's equal protection rights.

## DISPOSITION

The judgment is affirmed.