Filed 8/19/20  P. v. Steele CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C088665 |
| Plaintiff and Respondent, | (Super. Ct. No. CH035617) |
| v. | |
| WANDA JANETTE STEELE, | |
| Defendant and Appellant. | |

Defendant Wanda Janette Steele appeals from the judgment entered after she pleaded guilty to conspiracy to introduce a controlled substance (methamphetamine) into a state prison.  (Pen. Code, §§ 182, subd. (a)(1), 4573.)[1]  She contends the trial court's order imposing a $600 presentence investigation report fee must be reversed because the record contains insufficient evidence of her ability to pay this fee.  She further contends

---

[1]  Undesignated statutory references are to the Penal Code.

1

that reversal is required because her three-year county jail sentence violates equal protection principles, as she is unable to earn the same conduct credits that she could earn had she been sentenced to state prison. Anticipating that she may have forfeited her claims for failing to object below, she alternatively argues that trial counsel rendered ineffective assistance. We affirm the judgment.

## BACKGROUND

We dispense with a recitation of the facts underlying the charged offenses as they are unnecessary to our resolution of this appeal. It suffices to say that in July 2018, defendant was charged by information with one count of conspiracy to introduce methamphetamine into a state prison (§§ 182, subd. (a)(1), 4573; count I) and two counts of sending methamphetamine into a state prison (§ 4573; counts II and III). In August 2018 she pleaded guilty to count I and the remaining counts were dismissed in accordance with the terms of a written plea agreement. In December 2018 the trial court sentenced her to three years in county jail and imposed various fines and fees, including a $600 presentence investigation report fee. The trial court also advised her that she was subject to a three-year period of postrelease community supervision (PRCS) following her release from custody.[2]

---

[2] The Criminal Justice Realignment Act of 2011 (Stats. 2011, ch. 15, § 1; Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1 (Realignment Act)) shifted responsibility for housing and supervising low-level felony offenders, who have neither current nor prior convictions for serious or violent offenses, from the state to the individual counties. (*People v. Scott* (2014) 58 Cal.4th 1415, 1418-1419; *People v. Cruz* (2012) 207 Cal.App.4th 664, 671.) As part of the Realignment Act, the Legislature created PRCS as an alternative to parole for non-serious, nonviolent felonies. (*People v. Gutierrez* (2016) 245 Cal.App.4th 393, 399; see 3451, subd. (a).) A felon who qualifies for PRCS may be subject to supervision for up to three years after their release from custody. (*Ibid.*) "Although monitored by county probation officers, a defendant on PRCS is not on probation and PCRS is similar to parole." (*People v. Jones* (2014) 231 Cal.App.4th 1257, 1266.)

2

This timely appeal followed.

## DISCUSSION

### I

### *Presentence Investigation Report Fee*

Defendant contends the trial court erred in imposing a $600 presentence investigation report fee because the record contains insufficient evidence of her ability to pay this fee. She argues that the fee should be stricken, or the matter remanded for a hearing to determine her ability to pay. Anticipating that she may have forfeited her claim for failing to object below, she alternatively argues that trial counsel rendered ineffective assistance. We conclude that defendant has forfeited her claim of error and failed to establish ineffective assistance of counsel.

Prior to sentencing, the probation officer filed a report recommending that defendant pay various fines and fees, including a presentence investigation report fee in the amount of $600 dollars under section 1203.1b.[3] With respect to her financial status, the report noted that defendant was unemployed, had been permanently disabled since 2005, and received $920 per month in disability and Social Security benefits. In the section titled "1203.1b PC," the report stated, in pertinent part: *"The defendant is hereby given notice that she has the right to a Court hearing with counsel for determination of ability to pay for the pre-sentence report fee . . . . The defendant has the right to a review of her financial ability to pay at any time during the pendency of judgment rendered."*

-----

[3] Section 1203.1b, subdivision (a) provides, in pertinent part: "[T]he probation officer . . . shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of . . . preparing any presentence report made pursuant to . . . Section 1203. . . ." (§ 1203.1b, subd. (a).) Section 1203.1b, subdivision (b) provides, in pertinent part: "The [trial] court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the report of the probation officer . . . ." A defendant is entitled to a hearing on his or her ability to pay, but may waive that right. (§ 1203.1b, subd. (a).)

At sentencing, the trial court imposed various fines and fees, including the recommended $600 presentence investigation report fee. Defendant did not object to this fee or request an ability to pay hearing. When asked, defendant indicated that she needed a payment plan to pay for the fines and fees and could pay $50 a month following her release from custody. She requested that her payment be due on the third of every month because that was the day she "g[o]t paid." Thereafter, the court ordered defendant to make a $50 payment on the 15th of every month, beginning 60 days after she was released from custody.

We conclude defendant has forfeited her claim of error. Our Supreme Court has repeatedly held that when a court imposes fees and/or fines pursuant to statutes that explicitly include ability to pay findings, the defendant must raise an objection at the sentencing hearing or forfeit the appellate claim that the court failed to make such a finding or there was no evidence of the defendant's ability to pay the imposed amounts. (See *People v. Case* (2018) 5 Cal.5th 1, 52-53; *People v. McCullough* (2013) 56 Cal.4th 589, 590, 598-599; *People v. Nelson* (2011) 51 Cal.4th 198, 227; *People v. Gamache* (2010) 48 Cal.4th 347, 409; *People v. Avila* (2009) 46 Cal.4th 680, 728-729.) In *People v. Trujillo* (2015) 60 Cal.4th 850, our Supreme Court specifically addressed the imposition of probation costs under section 1203.1b, and concluded that a defendant must object in the trial court as a prerequisite to challenging such costs on appeal. (*Id.* at pp. 853-854, 857-859 [probation supervision and presentence investigation report fees]; see also *People v. Aguilar* (2015) 60 Cal.4th 862, 864-865 [same]; *People v. Snow* (2013) 219 Cal.App.4th 1148, 1149-1151 [same].) Having concluded that defendant forfeited her ability to challenge the presentence investigation report fee on appeal, we turn to her ineffective assistance of counsel argument.

In order to establish a claim of ineffective assistance of counsel, the defendant has the burden of demonstrating that counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms and

4

he or she was prejudiced by that deficiency.  (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)  " 'Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.]  If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.]' "  (*Ibid*.)  "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding."  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; see *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [ineffective assistance claims properly resolved on direct appeal only where record affirmatively discloses no rational tactical purpose for counsel's act or omission].)

We conclude defendant has failed to carry her burden to establish that trial counsel provided inadequate representation by failing to object to the presentence investigation report fee.  The record is silent as to why trial counsel did not object to the fee.  While the probation report noted that defendant had no assets, was unemployed, and owed debts, it also noted that she received $920 per month in benefits.  At sentencing, defendant indicated that she could make monthly payments in the amount of $50 after she was released from custody.  Under the circumstances, trial counsel could have reasonably concluded that defendant had the ability to pay all of the fines and fees imposed, including the presentence investigation report fee.

Citing a government website discussing Social Security and disability benefits, defendant claims that trial counsel was ineffective because her "modest disability income

5

ceased upon incarceration."[4]  Though this appears to be true, the same website indicates that Social Security and disability benefits may be reinstated following a term of incarceration <https://www.ssa.gov/reentry/benefits.htm> (as of August 17, 2020), archived at <https://perma.cc/H5SD-MDLT>.)  Defendant has made no effort to show that she will be ineligible for reinstatement of Social Security and disability benefits following her term of incarceration, let alone that trial counsel was or should have been aware of her ineligibility at the time of sentencing.  Moreover, even if trial counsel had knowledge of her ineligibility for reinstatement of benefits following her release from custody, it is possible that counsel was aware of facts outside the record that would have supported an ability-to-pay finding.  (See *People v. Price* (1991) 1 Cal.4th 324, 387 [counsel does not render ineffective assistance by failing to make objections that counsel reasonably determines would be futile].)  Accordingly, since defendant failed to demonstrate that " ' "there simply could be no satisfactory explanation" ' " for trial counsel's lack of objection to the presentence investigation fee, defendant's ineffective assistance claim fails.  (*People v. Lopez, supra*, 42 Cal.4th at p. 966.)

Even if we assume inadequate representation, defendant has failed to establish prejudice, because she is entitled to challenge her ability to pay the fee during the pendency of the judgment, including when she is on PRCS.  Our Supreme Court has explained that a "defendant who by forfeiture of a hearing is precluded from raising on appeal the issue of ability to pay probation-related fees is not wholly without recourse. . . . '[t]he court may hold additional hearings during the probationary, conditional

---

[4]  Defendant has not asked us to take judicial notice of the information published on the government website she references.  Because the information on that website is irrelevant to the disposition of the issues raised in this appeal, we need not decide whether judicial notice is appropriate.  (See *Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 795, fn. 22 [" 'As a general matter, judicial notice is not taken of matters irrelevant to the dispositive points on appeal' "].)

sentence, or mandatory supervision period to review the defendant's financial ability to pay. . . . Likewise, during the pendency of the judgment rendered under section 1203.1b, the defendant 'may petition the probation officer for a review of [his or her] financial ability to pay or the rendering court to modify or vacate its previous judgment on the grounds of a change of circumstances with regard to the defendant's ability to pay the judgment.' [Citation.] The sentencing court as well as the probation officer thus retains jurisdiction to address ability to pay issues throughout the probationary [or other supervisory] period." (*People v. Trujillo, supra*, 60 Cal.4th at pp. 860-861; see § 1203.1b, subd. (f).)[5]

## II

### *Equal Protection Challenge*

Defendant contends that reversal is required because her county jail sentence violates equal protection principles, as she is unable to earn the same conduct credits she could earn had she been sentenced to state prison. According to defendant, a person incarcerated in county jail can earn up to 50 percent in conduct credits while a person incarcerated in state prison can earn up to 66 percent in conduct credits in addition to various other credits. She argues that the "difference between these two possibilities" constitutes a violation of the equal protection clause of the state and federal Constitutions. In support of her position, defendant contrasts section 4019, which involves conduct

---

[5] Section 1203.1b, subdivision (f) provides, in pertinent part: "At any time during the pendency of the judgment rendered according to the terms of this section, a defendant against whom a judgment has been rendered may petition the probation officer for a review of the defendant's financial ability to pay or the rendering court to modify or vacate its previous judgment on the grounds of a change of circumstances with regard to the defendant's ability to pay the judgment."

7

credits that may be earned in local custody and other non-prison settings,[6] with various Penal Code sections (§§ 2933, 2933.05, 2933.3, 2935)[7] and state regulations (Cal. Code Regs., tit. 15, §§ 3043.3, 3043.4, 3043.5)[8] that relate to conduct credits that may be earned by state prison inmates.  We conclude that defendant has failed to establish an equal protection violation.

The Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution both prohibit the denial of equal protection of the laws.  (U.S. Const. 14th Amend.; Cal. Const., art. I, § 7.)  " 'The equal protection guarantees of the Fourteenth Amendment and the California Constitution are substantially equivalent and analyzed in a similar fashion.' "  (*People v. Lynch* (2012) 209 Cal.App.4th 353, 358.)

---

[6]  Section 4019 allows inmates incarcerated in county jail to earn "work performance and good behavior time credit" (i.e., conduct credit) reductions from his or her term of incarceration on a two-for-two basis--two days credit for every two days of incarceration. (§ 4019, subd. (f); see also *People v. Kennedy* (2012) 209 Cal.App.4th 385, 395-396.)

[7]  Section 2933 allows state prisoners to earn "worktime credit" (i.e., conduct credit) reductions from his or term of incarceration on a one-for-one basis--one day of credit for every one day of incarceration.  (*Id*., subds. (a), (b).)  Section 2933.05 authorizes postsentence credit for a prisoner's successful completion of specific program performance objectives in approved rehabilitative programming.  This credit is in addition to any credit awarded under section 2933.  (*Id*., subd. (a).)  Section 2933.3 provides, among other things, that "any inmate assigned to a conservation camp by the Department of Corrections and Rehabilitation, who is eligible to earn one day of credit for every one day of incarceration pursuant to Section 2933 shall instead earn two days of credit for every one day of service."  (*Id*., subd. (a).)  Section 2935 provides that "the Secretary of the Department of Corrections and Rehabilitation may grant up to 12 additional months of reduction of the sentence to a prisoner who has performed a heroic act in a life-threatening situation, or who has provided exceptional assistance in maintaining the safety and security of a prison."

[8]  Defendant relies on sections 3043.3 [milestone completion credit], 3043.4 [rehabilitative achievement credit], and 3043.5 [educational merit credit] of title 15 of the California Code of Regulations.

" 'Broadly stated, equal protection of the laws means "that no person or class of persons shall be denied the same protection of the laws [that] is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness." ' . . . Thus, . . . a threshold requirement of any meritorious equal protection claim 'is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner. [Citation.]' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Guzman* (2005) 35 Cal.4th 577, 591-592.) "In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.) If an equal protection claim does not satisfy this preliminary requirement, it fails. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 254.)

If two groups are sufficiently similar with respect to the law being challenged, we consider whether disparate treatment of the two groups is justified. (*People v. McKee, supra,* 47 Cal.4th at p. 1207.) Unless the law treats similarly situated persons differently on the basis of race, gender, or some other criteria calling for heightened scrutiny, we apply the rational basis test, which requires a determination of whether the legislative classification bears a rational relationship to a legitimate state purpose. (*People v. Moreno* (2014) 231 Cal.App.4th 934, 939; see *Adams v. Commission on Judicial Performance* (1994) 8 Cal.4th 630, 659 [the heightened strict scrutiny standard of review, which requires a compelling state interest to justify the disparity, only applies if a legislative classification involves a suspect classification or significantly infringes upon a fundamental right].)

Defendant contends that postconviction county jail inmates are similarly situated to state prison inmates for purposes of equal protection because both groups are "in state

9

custody in a locked institution." Defendant further contends that the differential treatment of these two similarly situated groups with respect to the amount of conduct credits they may earn while incarcerated implicates the fundamental interest of personal liberty, thereby requiring a compelling state interest to justify the disparity, which does not exist. Alternatively, assuming the rational basis test applies, defendant argues that the differential treatment of the two groups does not rest upon any reasonable basis, and therefore the disparity violates equal protection principles. Defendant's showing is insufficient to establish an equal protection violation.

The constitutional guaranty of equal protection recognizes that persons similarly situated with respect to the legitimate purpose of the law receive like treatment, but it does not require absolute equality; "equal protection does not mandate uniform laws with respect to different persons or classes. Instead, ' . . . the Legislature may make a reasonable classification of persons and pass special legislation applying to certain classes. The classification cannot be arbitrary, but must be based on some difference in the classes having a substantial relation to a legitimate objective to be accomplished. [Citation.] The presumption is in favor of the classification and will not be rejected unless plainly arbitrary.' " (*People v. Eddy* (1995) 32 Cal.App.4th 1109.)

Prior to the Realignment Act, California courts uniformly rejected equal protection challenges to the different ratios for the calculation of credits used in sections 4019 (county jail inmates) and 2933 (state prison inmates):[9] "Numerous cases have held that various classes of detainees are *not* similarly situated with respect to the award of conduct

---

[9] As noted, section 4019 currently allows county jail inmates to earn two days of credit for every two days of incarceration while section 2933 currently allows prison inmates to earn one day of credit for every one day of incarceration. (§ 4019, subd. (f); § 2933, subds. (a), (b).) Except for a 10-month period in 2010, section 4019 provided that county jail inmates could earn conduct credits at a less generous rate before the Realignment Act, which became effective October 1, 2011. (See *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48-49.)

10

credits. . . . [F]or example, a nonviolent felon earns fewer conduct credits during presentence confinement in a local detention facility [citations] than he or she does once sentenced to state prison and enrolled in a qualifying work program [citations]. The courts have uniformly rejected equal protection claims challenging this disparity, finding that pretrial detainees and state prison inmates are not similarly situated for purposes of the statutes [citations], or alternatively that the disparate treatment is justified by the state's interest in rehabilitating convicted felons. [Citations]" (*People v. Ramos* (1996) 50 Cal.App.4th 810, 822 [collecting cases].) "Similarly, the courts have upheld other statutory schemes which treat detainees differently when it comes to conduct credits." (See *id*. at pp. 823-824 [collecting cases].)

As a threshold matter, defendant has not demonstrated that the two groups she has identified--postconviction county jail inmates and state prison inmates--are similarly situated but treated unequally with respect to the ability to earn conduct credits. She acknowledges that county jail inmates and state prison inmates may earn the same amount of conduct credit under the current versions of section 4019, subdivision (f) (county jail inmates) and section 2933, subdivisions (a) and (b) (state prison inmates); it is possible for both groups to receive a 50 percent reduction in their sentence. However, she contends that state prison inmates may earn additional conduct credits that county jail inmates are unable to earn, citing several Penal Code sections (§§ 2933.05 [credits for completion of specific program performance objectives in approved rehabilitative programming], 2933.3 [credits for inmates assigned to conservation camps], 2935 [credit for heroic acts or exceptional assistance), and state regulations (Cal. Code Regs., tit. 15, §§ 3043.3 [milestone completion credit], 3043.4 [rehabilitative achievement credit], 3043.5 [educational merit credit]).

The People do not dispute that state prison inmates may earn more conduct credits than county jail inmates under the statutes and regulations relied on by defendant but argue that defendant has failed to establish that county jail inmates are similarly situated

11

to state prison inmates for equal protection purposes. We agree. Defendant makes no attempt to meet her burden to show that postconviction county jail inmates like her are similarly situated to state prison inmates with respect to the purposes of the conduct credit statutes and regulations she relies on. Instead, she merely highlights the disparity of treatment between the two groups. Her challenge therefore fails because she has not satisfied the initial requirement for a meritorious equal protection claim. (*Cooley v. Superior Court, supra,* 29 Cal.4th at p. 253 [equal protection challenge fails where the defendant does not satisfy threshold requirement of state classification of two or more similarly situated groups receiving unequal treatment].)

But even assuming the two groups identified by defendant are similarly situated and treated unequally for purposes of equal protection, defendant has not shown that the disparate treatment is not justified. While personal liberty is a fundamental interest (*People v. Olivas* (1976) 17 Cal.3d 236, 251), personal liberty is not at stake in cases involving conduct credits because the statutes authorizing such credits do not alter the penalty for any crime; a prisoner who earns no conduct credits merely serves the full sentence originally imposed. Instead of addressing punishment for past criminal conduct, the statutes address future conduct in a custodial setting by providing increased incentives to engage in productive work and maintain good behavior. (See *People v. Brown* (2012) 54 Cal.4th 314, 325, 327-329; *In re Stinnette* (1979) 94 Cal.App.3d 800, 805, fn. 4, 806.) Therefore, the rational relationship test applies. Under that test, we ask whether the challenged classification bears a rational relationship to a legitimate state purpose or, put another way, whether there is any reasonably conceivable state of facts that could provide a rational basis for the classification. (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481-482.) Where there are plausible reasons for a classification, our inquiry is at an end. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1201, overruled on other grounds in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871.) Such is the case here. Defendants sentenced to state prison generally face longer periods of confinement for

12

more serious offenses than defendants sentenced to county jail and face more challenges in reintegrating into society after detainment.  The Legislature could have reasonably concluded that these categories of inmates differ in their need for rehabilitation and opportunity to participate in work programs and other programs or activities that promote the educational, behavioral, or rehabilitative development of an inmate.  The Legislature had a legitimate purpose in motivating state prison inmates to participate in such programs and activities by allowing them to earn conduct credits for doing so.[10]

## DISPOSITION

The judgment is affirmed.


| /s/ |
| --- |
| Duarte, J. |



We concur:


| /s/ |
| --- |
| Mauro, Acting P. J. |



| /s/ |
| --- |
| Renner, J. |


---

[10]  Because we have rejected defendant's equal protection argument on the merits, we need not and do not address her alternative contention that she received ineffective assistance based on counsel's failure to raise an equal protection argument in the trial court.