[Crim. No. 17167. Fourth Dist., Div. Three. Nov. 30, 1983.]

In re HENRY JOHN BENDER on Habeas Corpus.

Henry John Bender, in pro. per., for Petitioner.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Lillian L. Quon, Deputy Attorneys General, for Respondent.

**OPINION**

**TROTTER, P. J.**—Petitioner Henry John Bender filed a petition for a writ of habeas corpus challenging the exclusive application of Penal Code section 2933's worktime credit provisions to offenses occurring on or after January 1, 1983.[1] We noted good cause and ordered the Attorney General to show

---

[1]All further statutory references are to the Penal Code.

Section 2933 provides: "(a) It is the intent of the Legislature that persons convicted of crime and sentenced to state prison, under Section 1170, serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Director of Corrections for performance in work, training or education programs established by the Director of Corrections. Worktime credits shall apply for performance in work assignments and performance in elementary, high school, or vocational education programs. Enrollment in a two- or four-year college program leading to a degree shall result in the application of time credits equal to that provided in Section 2931. For every six months of full-time performance in a credit qualifying program, as designated by the director, a prisoner shall be awarded worktime credit reductions from his term of confinement of six months. A lesser amount of credit based on this ratio shall be awarded for any lesser period of continuous performance. Less than maximum credit should be awarded pursuant to regulations adopted by the director for prisoners not assigned to a full-time credit qualifying program. Every prisoner who refuses to accept a full-time credit qualifying assignment or who is denied the opportunity to earn worktime credits pursuant to subdivision (a) of Section 2932 shall be awarded no worktime credit reduction. Every prisoner who voluntarily accepts a half-time

cause why relief should not be granted. However, for reasons stated below, we deny the relief requested.

## FACTS

Bender was convicted of one count each of robbery (§ 211) and burglary (§ 459) committed on October 6, 1976; both counts were enhanced by use of a firearm (§ 12022.5) and excessive taking (§ 12022.6). He was sentenced to the midterm of three years for robbery, plus two years for each enhancement, for a total of seven years. His two year midterm sentence for burglary, plus two years for each enhancement (a total of six years), was stayed pending completion of the robbery sentence.

He was received by the Department of Corrections (the Department) on April 16, 1980, and given 261 days of credit pursuant to sections 2900.5[2]

---

credit qualifying assignment in lieu of a full-time assignment shall be awarded worktime credit reductions from his term of confinement of three months for each six-month period of continued performance. Except as provided in subdivision (a) of Section 2932, every prisoner willing to participate in a full-time credit qualifying assignment but who is either not assigned to a full-time assignment or is assigned to a program for less than full time, shall receive no less credit than is provided under Section 2931. Under no circumstances shall any prisoner receive more than six months' credit reduction for any six-month period under this section.

"(b) Worktime credit is a privilege, not a right. Worktime credit must be earned and may be forfeited pursuant to the provisions of Section 2932. Except as provided in subdivision (a) of Section 2932, every prisoner shall have a reasonable opportunity to participate in a full-time credit qualifying assignment in a manner consistent with institutional security and available resources.

"(c) Under regulations adopted by the Department of Corrections, which shall require a period of not more than one year free of disciplinary infractions, worktime credit which has been previously forfeited may be restored by the director. The regulations shall provide for separate classifications of serious disciplinary infractions as they relate to restoration of credits; the time period required before forfeited credits or a portion thereof may be restored; and the percentage of forfeited credits that may be restored for such time periods. No credits may be restored if they were forfeited for a serious disciplinary infraction in which the victim died or was permanently disabled. Upon application of the prisoner and following completion of the required time period free of disciplinary offenses, forfeited credits eligible for restoration under the regulations shall be restored unless, at a hearing, it is found that the prisoner refused to accept or failed to perform in a credit qualifying assignment or extraordinary circumstances are present that require that credits not be restored. 'Extraordinary circumstances' shall be defined in the regulations adopted by the director.

"The prisoner may appeal the finding through the Department of Corrections review procedure, which shall include a review by an individual independent of the institution who has supervisorial authority over the institution.

"(d) The provisions of subdivision (c) shall also apply in cases of credit forfeited under section 2931 for offenses and serious disciplinary infractions occurring on or after January 1, 1983."

[2]Section 2900.5 states in part: "(a) In all felony and misdemeanor convictions . . . when the defendant has been in custody . . . all days of custody of the defendant . . . shall be credited upon his term of imprisonment . . . ."

and 4019.[3] Additional good time and work credits were available to him under section 2931,[4] the predecessor of section 2933. His minimum release date was June 11, 1984.

The Legislature amended sections 2930-2932 and 4019 and added sections 2933-2935, effective January 1, 1983 (Assem. Bill No. 2954). Section 2934[5] provides prisoners received by the Department prior to January 1, 1983, may waive the provisions of section 2931 and elect to be considered for section 2933 credits. However, section 2933 credits are to be applied only to time served after the effective date of the waiver, which was determined by the Director of the Department to be January 1, 1983.[6]

---

[3]Section 4019 provides in part: "(a)  ". . . . . . . . . . . . . . . . . . . . . . . .
"(b) . . . for each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor . . . .

"(c) For each six-day period . . . one day shall [also] be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations . . . ."

[4]Section 2931 provides in pertinent part: "(a) In any case in which a prisoner was sentenced to the state prison pursuant to Section 1170, or if he committed a felony before July 1, 1977, and he would have been sentenced under Section 1170 if the felony had been committed after July 1, 1977, the Department of Corrections shall have the authority to reduce the term prescribed under such section by one-third for good behavior and participation consistent with subdivision (d) of Section 1170.2. . . .

"(b) Total possible good behavior and participation credit shall result in a four-month reduction for each eight months served in prison or in a reduction based on this ratio for any lesser period of time. Three months of this four-month reduction . . . shall be based upon forebearance from any act which the prisoner could be prosecuted in a court of law, either as a misdemeanor or a felony, or any act of misconduct described as a serious disciplinary infraction by the Department of Corrections.

"(c) One month of this four-month reduction . . . shall be based solely upon participation in work, educational, vocational, therapeutic or other prison activities. . . .

"(d) This section shall not apply to any person whose crime was committed on or after January 1, 1983."

[5]Section 2934 provides in part: "Under rules prescribed by the Director of Corrections, a prisoner subject to the provisions of Section 2931 may waive the right to receive time credits as provided in Section 2931 and be subject to the provisions of Section 2933. . . . A prisoner exercising a waiver under this section shall retain only that portion of good behavior and participation credits . . . attributable to the portion of the sentence served by the prisoner prior to the effective date of the waiver. A waiver under this section shall, if accepted by the department, become effective at a time to be determined by the Director of the Department of Corrections."

[6]The coincidence of the effective date of the statute and the waiver averts the separation of powers issue suggested by legislative delegation of this authority to the Director of Corrections. Bender claims nothing in Assembly Bill No. 2954 states that section 2933 is to be applied prospectively only. Such a statement ignores the plain meaning of section 2934, which provides credits earned prior to January 1, 1983, will be retained. The Legislature could not have intended to give double credits to those prisoners. Furthermore, section 2931 credits are not applicable to persons who commit crimes after January 1, 1983. Therefore, it is apparent that credits can be earned under section 2933 after January 1, 1983, only; persons delivered to the Department before January 1, 1983, may continue to accrue credits

Bender executed a written waiver pursuant to section 2934, effective January 1, 1983, which advanced his minimum release date to March 11, 1984. However, he claims to have worked since May 5, 1980, in a work program that would qualify him for credit under section 2933,[7] and calculates his minimum release date would be April 11, 1983, if section 2933 had retrospective application.

■ Bender argues to deny him the benefit of retrospective application of section 2933 violates equal protection under both the California and United States Constitutions. (Cal. Const., art. I, § 7; U.S. Const. amend. XIV, § 1.) He postulates that a defendant who also committed a robbery on October 6, 1979, was sentenced to seven years, but who was received by the Department after January 1, 1983, would be required to serve only three and one-half years under section 2933,[8] while his minimum prison time is almost five years.

## DISCUSSION

■ At the outset we must dispose of the threshold issue whether Bender's petition is barred for failure to exhaust administrative remedies. Persons under the jurisdiction of the Department have the right to appeal "decisions, conditions, or policies affecting his or her welfare." (Cal. Admin. Code, tit. 15, § 3003.) Bender failed to utilize this procedure and the Attorney General claims his petition to this court is therefore barred. We disagree.

The doctrine of exhaustion of administrative remedies has several exceptions, one of which is futility: "when the aggrieved party can positively state what the administrative agency's decision in his particular case would be. [Citations.]" (*Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761]; see also *Gantner & Mattern Co.* v. *California E. Com.* (1941) 17 Cal.2d 314, 318 [109 P.2d 932].) Bender's case falls within this exception. The Department's final reviewer of administrative appeals has declared the agency intends to apply section 2933 prospectively

under section 2931 or they may opt to become eligible for section 2933 credits effective January 1, 1983. (§ 2934.)

[7] We have no verification of this claim in the record, but the Attorney General does not dispute its truth.

[8] Bender presents four situations in which that result is possible:

(a) A defendant released on pretrial bail and post trial appeal bond whose conviction was not final (affirmed on appeal) until after January 1, 1983; (b) A defendant who was not apprehended immediately due to delays in investigation or apprehension and who was therefore not sentenced until on or after January 1, 1983; (c) A defendant who evaded justice either prior to arrest or after being released on bail; or (d) a defendant confined on or after January 1, 1983, due to delays, continuances, mistrials, or retrials.

only and, further, that the agency is without authority to resolve the legal issue raised by Bender.[9]

If Bender's claim is meritorious, to require exhaustion of administrative remedies would result in irreparable harm since he would be incarcerated long after his minimum release date. (See *Ogo Associates* v. *City of Torrance, supra,* 37 Cal.App.3d at p. 834.) He is therefore not required to pursue further administrative remedies to invoke the jurisdiction of this court.

We next turn to the equal protection issue raised by petitioner. ■ The equal protection clauses of the United States and California Constitutions are applicable when similarly situated persons are treated differently as a result of state action. (*Truax* v. *Corrigan* (1921) 257 U.S. 312, 336-338 [66 L.Ed. 254, 264-265, 425 S.Ct. 124, 27 A.L.R. 375]; *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) ■ When the interest affected is "fundamental," or where the governmental classification is "suspect," the legislation must be necessary to implement a compelling state interest. ■ Otherwise, the legislation must be rationally related to a legitimate state interest. (*McGinnis* v. *Royster* (1973) 410 U.S. 263, 270 [35 L.Ed.2d 282, 289, 93 S.Ct. 1055]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) ■ Under the latter test, the contested legislation is presumed to be constitutional. (*In re Stinnette* (1979) 94 Cal.App.3d 800, 805 [155 Cal.Rptr. 912].)

■ We must initially determine whether Bender is "similarly situated" to a defendant who committed a crime on October 6, 1979, but whose entire sentence is eligible for section 2933 credits. To do so necessitates identifying the classification created by section 2933. (See *In re Monigold* (1983) 139 Cal.App.3d 485, 489 [188 Cal.Rptr. 698].) Bender contends section 2933 classifies persons solely by virtue of the date they are delivered to the Department. If he is correct the classification is impermissible pursuant to *In re Kapperman* (1974) 11 Cal.3d 542, 548-550 [114 Cal.Rptr. 97, 522 P.2d 657] and *In re Morales* (1981) 115 Cal.App.3d 456, 460-461 [171 Cal.Rptr. 425].

■ ■ ■ We look to the Legislature's purpose in creating the classification for resolution. (See *People* v. *Hernandez* (1979) 100

---

[9]We note the following statement appearing on a letter written by James W. L. Park, Assistant Director of Policy Operations, Department of Corrections, to Arthur A. Johnson, an inmate requesting retroactive application of section 2933: "There are no provisions within the law that it is to be applied retroactively to the beginning of presently incarcerated inmates' terms. The law specifically states that all articles of the law are to become effective January 1, 1983. . . . The issues raised by your appeal are ones involving legal matter rather than policy matter. For this reason they cannot be resolved through the administrative process." (Exhibit A-1 to Bender's Supplement to Traverse.)

Cal.App.3d 637, 645 [160 Cal.Rptr. 607], disapproved on other grounds in *People* v. *Williams* (1983) 140 Cal.App.3d 445, 450 [189 Cal.Rptr. 497].)[10] The Determinate Sentencing Act (DSL), effective July 1, 1977, explicitly states the purpose of imprisonment is punishment. (§ 1170, subd. (a)(1).) Under the DSL, as originally enacted, the maximum credit available was a four-month reduction of sentence for every eight months served: three months "good-time" credit and one month work credit. (Former §§ 2930, 2931.) Under section 1170.2, subdivision (d), the good behavior and participation credits available pursuant to the DSL applied to prisoners sentenced under the DSL's predecessor, the Indeterminate Sentence Law (ISL), but only for any time served after July 1, 1977, the DSL's effective date. (See *In re Stinnette, supra,* 94 Cal.App.3d 800.)

Significantly, the 1983 amendments to sections 2930 et seq., delete all good time credits, and provide instead for work or performance credits only. For every six months of full-time performance in a qualifying program the prisoner is now to receive six-months credit against his term of confinement. (§ 2933.)

■ Good time credits are designed to encourage conformity to prison regulations and discourage criminal activity while in custody. (*People* v. *Saffell* (1979) 25 Cal.3d 223, 233 [157 Cal.Rptr. 897, 599 P.2d 92]; *People* v. *Reynolds* (1981) 116 Cal.App.3d 141, 147 [171 Cal.Rptr. 461].) Participation or work credits, on the other hand, are intended to induce inmate productivity as well as rehabilitation. Passive good behavior is no longer the *sine qua non* of incarceration. ■ Therefore Bender and his hypothetical defendant are not similarly situated, since the distinction between the classes is not merely date of delivery to the Department, but reflects instead a subtle but distinct change in the philosophy of earning credits.

Even assuming arguendo Bender is similarly situated to his hypothetical defendant and is therefore disadvantaged by the law, a denial of equal protection is established only if the classification fails to satisfy the appropriate standard of review. Bender argues the instant case must pass strict scrutiny: the law must be necessary to promote a compelling state interest. The Attorney General, on the other hand, maintains it is "well settled" that "legislation affecting the grant or entitlement to credit against a term of custody is subject, upon constitutional challenge, to the less stringent 'rational basis' test." Although far from "well settled," we are compelled to conclude the rational basis test applies in the instant case.

---

[10]A real problem in identifying the classification is deciding how broadly or narrowly to frame the classes. Reference to the Legislature's purpose is the guide in defining the classification involved. (See *In re Monigold, supra,* 139 Cal.App.3d at p. 489.)

Bender places great emphasis on *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], in arguing strict scrutiny is the appropriate standard of review. In *Sage* the defendant was returned to court for sentencing when he was found unamenable to treatment after commitment to a state hospital as a mentally disordered sex offender (MDSO). Initially, the court noted the defendant's equal protection claim based on denial of conduct credits available to inmates of correctional institutes was foreclosed by *People* v. *Saffell, supra,* 25 Cal.3d 223, where the compelling state interest test had been applied. (26 Cal.3d at p. 506.) As to the defendant's remaining equal protection claim, the court found no "rational basis for, much less a compelling state interest in, denying presentence conduct credit to detainee/felons [and not to detainee/misdemeanants]. (Fn. omitted.)" (*Id.,* at p. 508.) However, in a footnote, the court indicated strict scrutiny was appropriate. (*Id.,* p. 508, fn. 6.) Nevertheless, the court refused to apply the credits retroactively before July 1, 1977, noting that credits were inconsistent with the theory of the ISL. (*Id.,* at p. 509, fn. 7.)

Although the court did apply the stricter standard of review in the remaining cases cited by Bender, it did so in the context of an initial deprivation of liberty and not in the context of solely prospective statute applications. *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375] was a challenge to the initial commitment of a defendant to the California Youth Authority for a term longer than the maximum jail term possible for someone over 21 years of age. *In re Martin* (1981) 125 Cal.App.3d 896 [178 Cal.Rptr. 445] and *People* v. *Hankins* (1982) 137 Cal.App.3d 694 [187 Cal.Rptr. 210] involved sentencing of defendants following their return to court from voluntary commitment to the California Rehabilitation Center upon being found unamenable to treatment. In *People* v. *Williams, supra,* 140 Cal.App.3d 445, the defendant challenged a statute giving greater effect to prior in-state felony convictions than to out-of-state priors. *People* v. *Sage, supra,* 26 Cal.3d 498, also deals with initial deprivation of liberty by refusing to allow conduct credits for MDSOs. Contrary to Bender's contention, the *Sage* court applied rational basis review to the prospective only application of section 2900.5 (dealing with good time credits, see fn. 2, *ante*).

*In re Stinnette, supra,* 94 Cal.App.3d 800, involves the distinction between initial deprivation of liberty and later state action in the context of exclusively prospective application of DSL credit provisions.[11] The court noted punishment-lessening statutes given prospective application do not violate equal protection. (*Id.,* at pp. 805-806; see also *In re Kapperman, supra,* 11 Cal.3d at p. 546.) The *Stinnette* court declared the credit provi-

---

[11]*Stinnette* was sentenced under the ISL, predecessor to the DSL.

sions did not deprive defendant of any liberty, but rather shortened time served.[12] Since the statute was "wholly amelioratory" in character, the fundamental right to liberty was not violated, and rational basis review was appropriate. (*Stinnette, supra,* 94 Cal.App.3d at pp. 805-806, fn. 4.) The court then identified the purpose of the DSL provisions (motivating good conduct and minimizing threats to prison security) and declared: "Reason dictates that it is impossible to influence behavior after it has occurred. The classification involved is reasonable, and no equal protection violation is indicated." (*Id.,* at p. 806.)

Bender claims *In re Stinnette, supra,* 94 Cal.App.3d 800 and *People* v. *Hernandez, supra,* 100 Cal.App.3d 637, both of which apply rational basis review, are "pariahs" which were subsequently overruled, sub silentio, by *People* v. *Sage, supra,* 26 Cal.3d 498. However, *Sage* also refused to apply credit provisions retroactively to persons sentenced under a different sentencing scheme. (*Id.,* at p. 509, fn. 7, citing *In re Kapperman, supra,* 11 Cal.3d 542.) The *Kapperman* court noted it was not confronting a case "involving the application to previously convicted offenders of statutes lessening the *punishment* for a particular offense. The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written. [Citations.]" (*Kapperman, supra,* 11 Cal.3d at p. 546; italics in original.) *People* v. *Hernandez, supra,* 100 Cal.App.3d 637, was disapproved in *People* v. *Williams, supra,* 140 Cal.App.3d 445, for applying rational basis review in a situation involving the initial deprivation of liberty (statute giving greater effect to in-state felony convictions than out-of-state priors in enhancing sentences). Therefore, *Hernandez* presents no opposition to the application of rational basis review involving a punishment-lessening statute. Since the instant case involves a statute very similar to the challenged legislation in *Stinnette,* and both *Kapperman* and *Sage* are distinguishable, we conclude that only a rational basis review is required.

The legislative purpose in changing from two-thirds good time and one-third work credits to only work credits was to motivate participation in work programs. (See fn. 6, *ante.*) As stated in *Stinnette,* "[r]eason dictates it is impossible to influence behavior after it has occurred" (*In re Stinnette, supra,* 94 Cal.App.3d at p. 806); furthermore, prospective application of section 2933 is entirely fair to Bender, who received the benefit of his

---

[12]Accord, *Greenholtz* v. *Nebraska Penal Inmates* (1979) 442 U.S. 1, 7 [60 L.Ed.2d 668, 675, 99 S.Ct. 2100], where, in drawing a distinction between parole release and parole revocation for the purpose of determining due process rights, the United States Supreme Court held a convicted individual had no constitutional or inherent right to be conditionally released before the expiration of a valid sentence.

expectation of one-third work credits for the work he performed prior to January 1, 1983. Indeed, retroactive application of the section would be unfair to those convicted persons who did not work, but might have, had they expected a six month sentence reduction for six months of work performed.

We find the prospective only application of section 2933 does not constitute a denial of equal protection. To hold otherwise would mean the Legislature could never ameliorate prison sentences without applying the new rules to every "similarly situated" prisoner in the State of California. Such a result is anomalous and clearly unsupported by current law.

The habeas corpus petition is denied.

Crosby, J., and Sonenshine, J., concurred.