Filed 4/29/22

**CERTIFIED FOR PARTIAL PUBLICATION**\*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>JIMMY YANG,<br><br>        Defendant and Appellant. | A162703<br><br>(Del Norte County Super. Ct. No. CRF189173) |

Defendant Jimmy Yang appeals from a judgment after he pled no contest to assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)).[1]  On appeal, he argues the trial court erred by failing to award him presentence conduct credit for the time he spent confined in Napa State Hospital receiving treatment for restoration of his competency.  Applying equal protection principles, we conclude defendant must be afforded the same opportunity for presentence conduct credit that defendants receiving competency treatment in a county jail facility have been given under legislation that became effective on January 1, 2019.  Accordingly, we will remand the matter to the trial court for resentencing.

---

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part D of the Discussion.

[1]      All subsequent statutory references are to the Penal Code unless otherwise indicated.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2018, the People charged defendant with one count of assault with a deadly weapon (§ 245, subd. (a)(1)) and one count of child abuse (§ 273a, subd. (a)). The charges stemmed from an incident during which defendant struck his father in the head with a flashlight and kicked a juvenile down the stairs.

On April 9, 2018, the trial court suspended proceedings pursuant to section 1368. The court found defendant incompetent to stand trial and committed him to the Department of State Hospitals. Defendant was transported to Napa State Hospital on August 13, 2018. On August 7, 2019, the medical director of the state hospital certified that defendant was competent to stand trial, and he was transported back to the county jail. On August 14, 2019, the court found defendant competent and reinstated criminal proceedings.

In late August 2019, defendant pled no contest to an amended count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). In accord with the terms of his plea, the trial court imposed a four-year sentence, suspended its execution, and placed defendant on probation. By April 2020, the probation department filed its first petition for revocation of probation, followed by five additional petitions over the course of about half a year. Ultimately, the court executed the previously imposed sentence.

At his May 13, 2021 sentencing hearing, defendant noted that the probation department had recommended he receive only actual time credit and no conduct credit for the time he spent receiving competency treatment in Napa State Hospital. He argued, on equal protection grounds, that because section 4019, subdivision (a)(8) had been amended to permit conduct

2

credit for defendants found to be incompetent to stand trial (IST defendants) and receiving competency treatment in county jail treatment facilities, he should also receive conduct credit for the time he spent as an IST defendant receiving competency treatment in the state hospital. The trial court rejected the argument, stating that had the Legislature intended for state hospital competency detainees to receive conduct credit, it would have provided for that. The court awarded defendant 614 days of actual time credit, which included actual time spent in county jail and Napa State Hospital, and 254 days of conduct credit based on the time served in county jail. Defendant filed a notice of appeal.

## DISCUSSION

Defendant contends, on equal protection grounds, that he should receive conduct credit under section 4019, as amended by Senate Bill No. 1187 (Senate Bill 1187), for the 359 days he spent in Napa State Hospital as an IST defendant undergoing treatment for restoration of his competency. He also claims entitlement to such credit under Senate Bill No. 317 (Senate Bill 317), which became effective during the pendency of his appeal. We review these claims de novo. (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208; *People v. Brewer* (2011) 192 Cal.App.4th 457, 461.)

### A. Legal Background:  Conduct Credit for IST Defendants Receiving Treatment for Restoration of Competency

Since its enactment in 1976, section 4019 has provided that defendants confined in specific facilities and various settings may earn conduct credit for performing assigned labor and for complying with applicable rules and regulations. (§ 4019, subds. (a)–(c); see, e.g., *People v. Dieck* (2009) 46 Cal.4th 934, 939.) As relevant here, for every four-day period an inmate is confined in or committed to an enumerated facility or other listed setting, one day will

3

be deducted from the inmate's sentence for satisfactory performance of assigned labor and one day will be deducted for good behavior. (§ 4019, subds. (b)–(c).) "[I]f all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody." (*Id.*, subd. (f).) The purpose of conduct credit is to encourage prisoners to conform to the rules and regulations, and to participate in rehabilitative programs. (*People v. Saffell* (1979) 25 Cal.3d 223, 233 (*Saffell*).)

In the past, IST defendants were treated in state hospitals or other treatment facilities (§ 1367 et seq.; *In re Mille* (2010) 182 Cal.App.4th 635, 645–646) and were not statutorily eligible for conduct credit. (*People v. Waterman* (1986) 42 Cal.3d 565, 568–571 (*Waterman*); *People v. Jennings* (1983) 143 Cal.App.3d 148, 150.) In *Waterman*, the California Supreme Court found no constitutional equal protection violation in the fact that offenders committed to the California Rehabilitation Center (CRC) for narcotics addiction were entitled to conduct credit, while IST defendants receiving treatment while committed at a state hospital were not. (*Waterman*, at pp. 568–571.) Observing that treatment of those with narcotics addiction was meant to offer *postconviction* rehabilitative treatment, while treatment for IST defendants was meant to restore competency so that the criminal process could proceed, the court reasoned that the treatment goal for IST defendants "would be hindered if mere institutional good behavior and participation automatically reduced the therapy period." (*Id.* at pp. 569–570.) The court additionally concluded that "pretrial confinement for treatment of incompetence is so different from other forms of *pretrial* detention" that equal protection principles did not entitle defendants confined for treatment to "the benefit of the limited work-and-

conduct-credit system available to persons confined in jail prior to trial." (*Id.* at p. 571, fn. 4.) This remained the state of the law for many years.

In 2007, the statutory landscape began to change with the enactment of section 1369.1, providing that a county jail could be a "treatment facility" within the context of section 1367 et seq. for the sole purpose of administering antipsychotic medication to IST defendants. (Stats. 2007, ch. 556, § 3 (Sen. Bill No. 568).) Additional legislation in 2012 provided for treatment of IST defendants in county jails without the limitation pertaining to administering antipsychotic medication. (§ 1369.1, as amended by Stats. 2012, ch. 24, § 25.) In 2017, the Legislature gave the Department of State Hospitals jurisdiction over any county jail treatment facility under contract to provide competency restoration services. (Welf. & Inst. Code, § 4100, subd. (g), added by Stats. 2017, ch. 17, § 61.)

As pertinent here, section 4019 was recently amended twice: once during the period when defendant was at Napa State Hospital receiving treatment for his incompetency and a second time during the pendency of this appeal. We address these amendments in order.

First, in 2018, Senate Bill 1187 amended section 4019 by adding new subdivision (a)(8), providing that IST defendants are eligible for conduct credit while confined or committed to a county jail treatment facility pursuant to section 1367 et seq. (Stats. 2018, ch. 1008, § 5 (effective Jan. 1, 2019); see also § 1375.5, subd. (c) [providing same], as amended by Stats. 2018, ch. 1008, § 4.) As the legislative history confirms, Senate Bill 1187 was enacted to ensure that IST defendants being held and treated in county jail would be entitled to earn conduct credits just as other jail inmates. (Assem. Com. On Pub. Safety, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 5.) Although legislative analyses reflected the

Legislature's express awareness that IST defendants in a state hospital were not statutorily or constitutionally entitled to conduct credit under section 4019, the analyses disclosed no explanation why the Legislature—at that point—declined to similarly extend the availability of conduct credit to such defendants.  (See, e.g., *ibid.*; Off. of Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended Aug. 23, 2018, p. 4; Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended Feb. 15, 2018, pp. 4–5.)

Second, in 2021, Senate Bill 317 expanded section 4019, subdivision (a)(8), so that IST defendants receiving competency treatment in a state hospital could also receive conduct credits.  (Stats. 2021, ch. 599, § 3 (effective Jan. 1, 2022).)  The legislative history indicates the bill was meant to "ensure[] incompetent defendants are eligible for the same conduct credit as their competent counterparts, while receiving treatment in any treatment facility or as an outpatient, not just . . . county jail treatment."  (Assem. Com. on Appropriations, Rep. on Sen. Bill No. 317 (2021–2022 Reg. Sess.) as amended July 12, 2021, p. 2.)

These legislative changes give rise to the following questions.  First, does Senate Bill 317, which became effective on January 1, 2022, apply retroactively to defendant?  If so, then defendant is eligible for the conduct credit he claims.  Second, if Senate Bill 317 does not apply retroactively, then do equal protection principles nevertheless require that defendant be afforded the same opportunity for conduct credit that Senate Bill 1187 extended to IST defendants receiving treatment in a county jail facility?  If so, then defendant is eligible for the conduct credit he claims, but only starting from the effective date of Senate Bill 1187, January 1, 2019.

6

## B. Senate Bill 317:  Retroactivity Analysis

Defendant argues that Senate Bill 317 should apply retroactively to him under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).  This argument fails under *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*).  (See also *People v. Orellana* (2022) 74 Cal.App.5th 319, 334–338 (*Orellana*).)

In *Brown*, the California Supreme Court considered a defendant's argument that a more generous but ultimately short-lived 2009 amendment to section 4019 applied retroactively to him under *Estrada*.  (*Brown, supra*, 54 Cal.4th at pp. 323–324.)  The version of section 4019 at issue in *Brown*, like the Senate Bill 317 amendment in this case, went into effect while the defendant's appeal was pending.  (*Id.* at pp. 318–319.)  The *Brown* court concluded *Estrada* did not apply because its holding was premised on mitigation of penalty for a particular crime, while section 4019 "addresses future conduct in a custodial setting by providing increased incentives for good behavior."  (*Brown*, at p. 325.)  In rejecting the argument that *Estrada* applied to statutes that reduce punishment in "any" manner, including by increasing custody credits, the *Brown* court explained:  "We do not take issue with the proposition that a convicted prisoner who is released a day early is punished a day less.  But . . . the rule and logic of *Estrada* is specifically directed to a statute that represents ' "a legislative mitigation of the *penalty for a particular crime*" ' [citation] because such a law supports the inference that the Legislature would prefer to impose the new, shorter penalty rather than to ' "satisfy a desire for vengeance" ' [citation].  *The same logic does not inform our understanding of a law that rewards good behavior in prison.*"  (*Brown*, at p. 325, fn. omitted and some italics added.)[2]

_____

[2]     *Brown* also rejected the defendant's argument that prospective application of the 2009 amendment to section 4019 violated equal protection

7

In light of *Brown*, we conclude that Senate Bill 317 does not apply retroactively to defendant under *Estrada*. While we acknowledge the Supreme Court has, in recent years, expanded the retroactivity rule of *Estrada* beyond what was described in *Brown* (see *Orellana, supra*, 74 Cal.App.5th at p. 335, fn. 8), we are constrained by *Brown*'s holding that without an express statutory declaration of retroactivity, amendments to section 4019 that allow for more generous credits must be given prospective application only. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## C. Senate Bill 1187: Equal Protection Analysis

### 1. Similarly Situated

"The Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution both prohibit the denial of equal protection of the laws. 'The equal protection guarantees of [both Constitutions] are substantially equivalent and analyzed in a similar fashion.' " (*People v. Cruz* (2012) 207 Cal.App.4th 664, 674 (*Cruz*).) "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that *the state has adopted a classification* that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated

---

principles. (*Brown, supra*, 54 Cal.4th at pp. 328–330.) Here, defendant does not contend that prospective application of Senate Bill 317 violates equal protection principles. Notably, the People do not argue that *Brown* forecloses the equal protection argument defendant makes based on Senate Bill 1187, which is analyzed in the next part of our discussion.

for purposes of the law challenged." ' " (*Brown, supra*, 54 Cal.4th at p. 328.) Indeed, "[t]here is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714.)

Pursuant to Senate Bill 1187, which became effective January 1, 2019, IST defendants became eligible for conduct credits for the time they spent receiving competency treatment in a county jail facility. This eligibility, however, did not extend to IST defendants receiving competency treatment in a state hospital. The People assume without conceding that the two groups of IST defendants are similarly situated for purposes of assessing the law's conduct credit disparity, but they proceed to argue—as will be discussed below—that rational basis review applies and that a rational basis supports the disparate treatment.[3]

We agree the two groups are similarly situated for purposes of evaluating the conduct credit disparity created by Senate Bill 1187. One purpose of the bill was to "[a]uthorize[] a person committed to a facility pending the restoration of mental competence to earn credits," though the bill ultimately only authorized defendants treated in jail facilities and not in state hospitals to such credit. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 3.) But both groups of defendants are subject to the same IST standards and procedures. (§ 1367 et seq.) Moreover, both groups are

---

[3] At oral argument, the People reiterated their position or "tactic" in this matter is to assume, but not concede, that the two groups are similarly situated. Though suggesting there might be a basis for concluding the two groups are not similarly situated, the People fail to proffer a clear argument on the point.

committed for treatment aimed at restoration of competency so that a trial may proceed. The only apparent difference between them is the location where the defendant receives competency treatment, which appears dependent on multiple factors, such as whether a particular facility has the physical space and resources to accept the commitment, the medical needs of the defendant, the security risk the defendant poses, and whether the committing county can reasonably and timely transport the individual to the proposed facility. (Cal. Code Regs., tit. 9, §§ 4710–4717; Welf. & Inst. Code, §§ 7228, 7230.) As such, defendants receiving competency treatment in a state hospital are sufficiently similar to defendants receiving competency treatment in county jail " ' "to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment." ' " (*People v. Yanez* (2019) 42 Cal.App.5th 91, 98; see, e.g., *id.* at pp. 98–99 [concluding pretrial and postjudgment home detainees were similarly situated with respect to section 4019, which entitled postjudgment home detainees, but not pretrial home detainees, to conduct credit].)

In reaching this conclusion, we acknowledge that our colleagues in the Sixth District recently rejected a similar equal protection argument in *Orellana, supra*, 74 Cal.App.5th 319. In *Orellana*, the defendant had been committed to a state hospital and spent time undergoing treatment for restoration of competency after Senate Bill 1187 took effect. (*Orellana*, at pp. 322–323, fn. 3.) There the defendant argued that "by righting the disparity in entitlement to section 4019 credits that remained under Senate Bill 1187, Senate Bill 317 upended the notion that there was any rational basis, let alone compelling state interest, for withholding conduct credits from inmates who receive competency treatment in state hospitals while allowing credits to be earned by their county jail facility counterparts." (*Orellana*, at

10

p. 339, fn. omitted.) *Orellana* rejected that argument, explaining that the Supreme Court's decision in *Brown, supra,* 54 Cal.4th 314, "rejected an equal protection challenge to the denial of custody credits at the increased rate under review for individuals who had served their time before enactment of the changes to section 4019" and considered "the forward-looking incentive of custody credits . . . the decisive factor." (*Orellana,* at p. 339.) In sum, *Orellana* characterized *Brown* as holding that "entitlement to conduct credits is directed at 'future conduct in a custodial setting' [citation] and effectively precludes the court from deeming two groups similarly situated for purposes of earning conduct credits when the time in custody preceded the availability of incentive based credits." (*Orellana,* at p. 341, italics omitted.)

We respectfully disagree with *Orellana* to the extent it finds that *Brown*'s similarly situated analysis forecloses an equal protection argument based on Senate Bill 1187. In holding that the prospective-only application of the 2009 amendment did not violate equal protection principles, *Brown* was essentially rejecting the defendant's attempt to make an end-run around the amendment's non-retroactive application: "[T]he important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That *prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows.*" (*Brown, supra,* 54 Cal.4th at pp. 328–329, italics added.)

Unlike the situation in *Brown,* defendant here is not advocating the position that IST defendants whose confinement for competency treatment predated Senate Bill 1187's effective date are similarly situated to IST defendants whose confinement postdated the law's effective date. Instead,

11

the instant case concerns the disparate treatment of two groups of IST defendants whose confinement for competency treatment postdated a statutory amendment that authorizes conduct credits only for those committed to a jail facility but not for those committed to a state hospital.

*Orellana* fails to address this distinction, and, in our view, reads *Brown* too broadly. *Orellana* seems to view *Brown* as compelling the conclusion that IST defendants receiving competency treatment in a jail facility and IST defendants receiving competency treatment in a state hospital are not similarly situated because the former group was incentivized to earn conduct credit after Senate Bill 1187's enactment while the latter group was not. (See *Orellana, supra*, 74 Cal.App.5th at p. 341.) But the disparate treatment between these two groups of IST defendants is precisely what is being challenged as unjustified. We cannot agree with *Orellana*'s conclusion that IST defendants confined in a state hospital are not similarly situated and so cannot even invoke equal protection because Senate Bill 1187 did not apply to them, even though their behavior might otherwise have qualified for conduct credit under the legislation. Again, in deciding whether persons are similarly situated, we look to whether " ' "the state has *adopted a classification* that affects two or more *similarly situated* groups in an unequal manner." ' " (*Brown, supra*, 54 Cal.4th at p. 328, italics added.)

In sum, we conclude the two groups of IST defendants are sufficiently similar to merit application of some level of scrutiny to determine whether distinctions between them justify the unequal treatment. We proceed to scrutinize the disparity.

### 2. *The Equal Protection Standard of Scrutiny*

In considering whether a law violates equal protection, courts apply different levels of scrutiny to different types of classifications. (*People v.*

12

*Wilkinson* (2004) 33 Cal.4th 821, 836 (*Wilkinson*).) " '[I]n cases involving "suspect classifications" or touching on "fundamental interests" . . . courts . . . subject[] the classifications to strict scrutiny.' " (*Warden v. State Bar* (1999) 21 Cal.4th 628, 641.) Under strict scrutiny, " ' "*the state* bears the burden of establishing not only that it has a compelling interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." ' " (*Ibid.*) "[W]here the law challenged neither draws a suspect classification nor burdens fundamental rights, the question we ask is different. We find a denial of equal protection only if there is no rational relationship between a disparity in treatment and some legitimate government purpose." (*People v. Chatman* (2018) 4 Cal.5th 277, 288–289.)

Defendant contends his equal protection challenge is subject to strict scrutiny because conduct credit eligibility impacts the length of one's incarceration, and thus personal liberty. Conversely, the People contend rational basis review applies.

" '[P]ersonal liberty is a fundamental interest, second only to life itself, as an interest protected under both the California and United States Constitutions.' As unambiguous as this statement is, determining which level of scrutiny applies is not always straightforward where a penal provision is claimed to touch upon a criminal offender's liberty interest." (*Cruz, supra,* 207 Cal.App.4th at p. 676.) "[C]ourts have reached different conclusions about which test applies to incongruities resulting from statutes involving time credits . . . ." (*People v. Applin* (1995) 40 Cal.App.4th 404, 409.) In this regard, numerous cases have applied strict scrutiny, also referred to as the compelling state interest test, to assess disparities in the law concerning credit allowances (see, e.g., *Saffell, supra,* 25 Cal.3d at pp. 228, 233, 235; *People v. Sage* (1980) 26 Cal.3d 498, 506–508 & fn. 6

13

(*Sage*); *People v. Caruso* (1984) 161 Cal.App.3d 13, 16–18 (*Caruso*); *In re Huffman* (1986) 42 Cal.3d 552, 559–561; see also *Waterman*, *supra*, 42 Cal.3d at p. 569), while other cases have applied rational basis review (see, e.g., *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53, 55 (*Rajanayagam*); *In re Bender* (1983) 149 Cal.App.3d 380, 388–389 (*Bender*).)

For the reasons that follow, we are persuaded by the *Saffell*, *Sage*, and *Caruso* decisions that strict scrutiny should apply.

In *Saffell*, a defendant convicted of sex offenses was found to be a mentally disordered sex offender (MDSO) amenable to treatment under the former Mentally Disordered Sex Offenders Act and was committed to a state hospital rather than being sentenced to prison. (*Saffell*, *supra*, 25 Cal.3d at pp. 225, 227–228.) He argued he was denied equal protection because he would earn zero conduct credits while committed, whereas he could earn conduct credits if sentenced to prison. (*Id.* at pp. 227–228.) The *Saffell* court rejected this, but only after finding a compelling state interest underlying treatment of MDSOs that justified the "legislative determination not to expand the application of 'good time' procedures to MDSO commitments." (*Id.* at pp. 233–235.)

In *Sage*, the defendant had also been committed as an MDSO, but he was later sentenced to state prison after being found unamenable to MDSO treatment. (*Sage*, *supra*, 26 Cal.3d at p. 501.) Although the *Sage* court relied on *Saffell* in rejecting defendant's equal protection challenge to the denial of presentence credit for the time he spent in the state hospital (*id.* at pp. 501–502; see *id.* at pp. 506 & 508, fn. 6 [stating *Saffell* applied the compelling state interest test, not rational basis review]), the court reached a different result on the point that the applicable version of section 4019 afforded conduct credits to pretrial detainees if they were eventually convicted of a

14

misdemeanor and sentenced to jail, but not if they were eventually convicted of a felony and sentenced to prison. (*Sage*, at pp. 507–508.) Finding "no rational basis for, much less a compelling state interest" in the disparate treatment, the *Sage* court concluded there was an equal protection violation and awarded the defendant conduct credits for his presentence detention time. (*Id.* at p. 508.)

In *Caruso*, the defendant contended that conduct credit for his presentence time should be calculated using the "more generous" postsentence formula set out in section 2933, and not with the "stingy" presentence formula in section 4019. (*Caruso*, *supra*, 161 Cal.App.3d at pp. 15–16.) In deciding which standard to utilize, the *Caruso* court recognized that "[t]he failure to apply section 2933 has more than a theoretical effect on the defendant who is jailed pending trial compared to his counterpart who remains free on bail or on his own recognizance. As a practical matter, the latter suffers a shorter period of incarceration." (*Id.* at p. 17.) In finding strict scrutiny appropriate, *Caruso* disagreed with *Bender*, *supra*, 149 Cal.App.3d 380, which distinguished strict scrutiny cases like *Saffell* and *Sage* and instead applied rational basis review to assess a challenge to a prospective-only version of section 2933. (*Caruso*, at p. 17; *Bender*, at pp. 382, 386.) In particular, *Caruso* was not persuaded by *Bender's* attempt to distinguish *Saffell* and *Sage* "as involving a grant or denial of conduct credits upon an initial deprivation of liberty, as opposed to a grant or denial resulting from a retroactive or solely prospective application of a newly enacted punishment-lessening statute." (*Caruso*, at p. 17.) Indeed, as *Caruso* aptly reasoned, "it matters little whether a defendant is denied presentence conduct credits at the time of sentencing or sometime later. In either case, the practical effect is clear. The defendant spends more

15

time in custody than he otherwise would have and suffers a correspondingly greater infringement on his personal liberty." (*Id*. at pp. 17–18.)

The strict scrutiny applied in *Saffell*, *Sage*, and *Caruso* aligns with *Waterman*, which referenced the compelling state interest test in holding that IST defendants confined for treatment were not entitled to conduct credit like offenders committed to the California Rehabilitation Center for drug addiction. (See *Waterman*, *supra*, 42 Cal.3d at pp. 569–571.) Indeed, when determining whether equal protection required the defendant's receipt of conduct credit under section 4019 for time spent receiving competency treatment, *Waterman* relied on the portion of *Sage* that applied strict scrutiny. (*Waterman*, at p. 571, fn. 4, citing *Sage*, *supra*, 26 Cal.3d at pp. 506–508.)

In their briefing, the People simply assert rational basis review applies without substantively addressing the foregoing authorities or offering an analysis to counter defendant's claim of a fundamental liberty interest. The People's mere citation to the Court of Appeal decisions in *People v. Ward* (2008) 167 Cal.App.4th 252 (*Ward*), *Rajanayagam*, *supra*, 211 Cal.App.4th 42, and *People v. Kennedy* (2012) 209 Cal.App.4th 385 (*Kennedy*)—without acknowledging that their application of rational basis review appears at odds with the California Supreme Court decisions in *Saffell*, *Sage*, and *Waterman*—is unhelpful. In any event, none of the People's authorities convinces us to shun strict scrutiny review.

In *Ward*, a defendant challenged the disparity between sentencing for possession of cocaine base and sentencing for possession of powder cocaine. (*Ward*, *supra*, 167 Cal.App.4th at pp. 257–258.) *Ward* applied rational basis review based on the California Supreme Court's decision in *Wilkinson*, *supra*, 33 Cal.4th 821, which had cautioned that strict scrutiny is not always

16

applicable to equal protection challenges concerning sentencing disparities. (*Ward*, at p. 258.) *Wilkinson*, in turn, concerned a similar challenge to a sentencing disparity related to crimes involving battery on a custodial officer and applied rational basis review because "[a] defendant . . . 'does not have a fundamental interest in a specific term of imprisonment or in the designation a particular crime receives.' " (*Wilkinson*, at pp. 832, 838.) Notably, the *Wilkinson* court concluded that applying strict scrutiny to the challenged sentencing disparity would be "incompatible with the broad discretion the Legislature traditionally has been understood to exercise in defining crimes and specifying punishment." (*Id*. at p. 838.)

Perhaps at a general level, *Ward* and *Wilkinson* might be read as providing some fodder for the People's position. But *Ward* and *Wilkinson* did not concern conduct credit laws, nor did those cases discuss, criticize, or overturn cases like *Sage* and *Saffell*, which applied strict scrutiny in the context of conduct credits. Unlike the claims at issue in *Ward* and *Wilkinson*, defendant is not pressing some right to a specific sentence for his crime, and resolution of this case does not encroach upon the Legislature's power to define crimes and specify punishment. Rather, defendant's claim rests on the fact that he faces a longer period of confinement than a hypothetical defendant charged with the same exact crime and found incompetent under the same exact standard, based on variables such as bed availability. (Cal. Code Regs., tit. 9, § 4710.) Thus, *Sage, Saffell*, and their progeny appear to be more on point, and we are bound to follow them. (*Auto Equity Sales, Inc.*, *supra*, 57 Cal.2d at p. 455.)[4]

---

[4] This case is also unlike the cases analyzing disparities in the application of the sex offender registration law to different crimes, which is not considered a form of "punishment" but nevertheless "imposes a 'substantial' and 'onerous' burden" on persons, particularly after release from

17

As for *Rajanayagam*, that case concerned an equal protection challenge to prior versions of section 4019 that provided defendants in local presentence custody with different amounts of conduct credit "based entirely on the dates they committed their offenses." (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 53.) Although *Rajanayagam* applied rational basis review to assess the equal protection issue, it did so without mentioning or analyzing *Saffell*, *Sage*, or *Waterman*. (*Id*. at pp. 53–55.)[5]

*Kennedy*, *supra*, 209 Cal.App.4th 385, is similar to *Rajanayagam* in that it also concerned a defendant relying on equal protection principles in seeking retroactive application of a 2011 amendment to section 4019 that was expressly made prospective only. (*Kennedy*, at pp. 395–396.) But *Kennedy* relied on decisions applying rational basis review to assess disparities in sentencing and other consequences of criminal convictions. (*Id*. at p. 397,

---

actual custody. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1196–1197, overruled in part by *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 879–888.)

[5] *Rajanayagam* relied on *Cruz, supra*, 207 Cal.App.4th 664, when stating that rational basis review applied. (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 53.) *Cruz*, however, involved a defendant sentenced to prison who argued on equal protection grounds that he should be resentenced to jail under the " '2011 Realignment Legislation' " which shifted responsibility for housing certain felons from state prison to county jails, and also allowed courts to fashion hybrid sentences with the potential for a conditional early release and for postrelease community supervision instead of parole. (*Cruz*, at p. 671.) After declining to apply strict scrutiny to the equal protection challenge, *Cruz* indicated that the challenged legislation did not have more than an incidental or marginal effect on the defendant's liberty as it did not alter statutorily prescribed sentences, and it further commented that defendants have no protectable interest "in serving [a] sentence in county jail as opposed to state prison." (*Id* at pp. 677–678.) Unlike the situation in *Cruz*, the legislation here directly impacts the length of incarceration for an IST defendant who receives treatment for restoration of competency after January 1, 2019 and is later sentenced.

citing *People v. Hofsheier*, *supra*, 37 Cal.4th 1185 and *Ward*, *supra*, 167 Cal.App.4th 252.)  Like *Rajanayagam*, *Kennedy* seemed unaware of *Saffell*, *Sage*, and *Waterman*.

Having concluded that strict scrutiny applies, we proceed to apply that standard.

### 3. Application

To reiterate, under strict scrutiny, " '*the state* must first establish that it has a *compelling* interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose.' " (*Saffell*, *supra*, 25 Cal.3d at p. 228.)

In this case, the People make no attempt to justify the disparate treatment with a compelling state interest, nor do they contend that the distinctions drawn by the law are narrowly tailored.  Instead, having pressed for application of rational basis review, the People tender arguments only under the rational basis standard.  Examining the People's proffered justifications, we conclude the People have not carried their burden of establishing a compelling state interest that justifies the challenged disparity and the necessity of the distinctions drawn to further that interest.

The People first attempt to justify the law's disparate treatment by contending that the availability of conduct credit is an appropriate incentive for IST defendants undergoing competency treatment in a county jail facility but not for IST defendants undergoing treatment in a state hospital.  That is, the availability of conduct credit properly incentivizes IST defendants in a jail facility to conform to jail rules, such as refraining from assaultive conduct, but such credit serves no purpose and is unnecessary for IST defendants in a state hospital who have no contact with general population prisoners.  We are not convinced.

19

To begin with, denying conduct credit to IST defendants in a state hospital is not necessary to incentivizing the good behavior of IST defendants in a jail facility. More to the point, state hospitals—like jails—are structured environments governed by various rules. (Welf. & Inst. Code, §§ 4005.5, 4027, 4101, 7253, 7254, 7325; see, e.g., Cal. Code Regs., tit. 9, §§ 883–884, 890–892, 4300, 4350.) Thus, the same interest in incentivizing good behavior appears equally reasonable and workable for defendants receiving competency treatment in a state hospital where patients with varying issues and/or criminal histories or proclivities are housed. (See, e.g., §§ 1026, 2962 et seq.; Welf. & Inst. Code, § 6600 et seq.) Finally, the notion that the availability of conduct credit would serve no purpose for IST defendants confined in a state hospital is undermined by the recent passage of Senate Bill 317 which, effective January 1, 2022, amended section 4019 to extend conduct credit to such defendants. (Stats. 2021, ch. 599, § 3.)

The People's second proffered justification for the law's disparate treatment rests on the circumstance that in 2007, Senate Bill No. 568 authorized county jails as permissible locations for some competency treatment as an "interim" measure until defendants could be admitted to a state hospital. In the People's view, this means that "necessarily, county jail interim treatment is not as comprehensive as full state hospital treatment" and that it was "rational for the Legislature to have determined that those receiving interim competency restoration treatment (or those able to have competency restored in the jail without a state hospital stay) are patient/prisoners who are not so ill and disoriented that they are incapable of responding to credit incentives." We are not persuaded.

"Even under deferential rational basis review, a statutory classification must be ' "rationally related to [a] 'realistically conceivable legislative

20

purpose[],' " ' not a ' "fictitious purpose[] that could not have been within the contemplation of the Legislature" ' but is simply invented by the court." (*People v. Yanez, supra*, 42 Cal.App.5th at p. 100.) It may be true that in 2007, the Legislature envisioned county jail treatment as an interim measure when it initially permitted jails to administer antipsychotic medication. (See Assem. Com. On Pub. Safety, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 5.) But that circumstance is not evidence that the Legislature still regarded county jail treatment as an interim measure when it later expanded the role of county jails in treating IST defendants and gave the Department of State Hospitals jurisdiction over county jail treatment facilities under contract to provide competency restoration services. (§ 1369.1, as amended by Stats. 2012, ch. 24, § 25, effective June 27, 2012; Welf. & Inst. Code, § 4100, subd. (g), as amended by Stats. 2017, ch. 17, § 61, effective June 27, 2017.)

The suggestion that the Legislature continues to regard county jail treatment as an interim measure, or that defendants receiving competency treatment in county jail "are not so ill and disoriented that they are incapable of responding to credit incentives," also seems to ignore the circumstance that, leading up to the time Senate Bill 1187 was passed, there was a long-standing problem with bed availability in state hospitals for treating IST defendants. (See *Stiavetti v. Clendenin* (2021) 65 Cal.App.5th 691, 699–701, 708–711; see also Off. of Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended Aug. 23, 2018, p. 4 [" 'The number of incompetent defendants being treated in California's state hospitals, developmental centers, and, more recently, county jails has increased steadily over recent decades. . . . Wait lists for placement in state operated treatment facilities continue to grow, impacting the operation of

21

county jails . . . ."]; Assem. Com. on Appropriations, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended Aug. 6, 2018, p. 1.) Every defendant found incompetent to stand trial meets the same standard for commitment (§ 1367, subd. (a)), and the circumstance that an IST defendant may be committed to either a jail facility or a state hospital depending on the availability of a bed provides yet another reason to invalidate the challenged conduct credit disparities.

In sum, our application of strict scrutiny leads us to conclude that defendant is entitled to conduct credit for the time he spent receiving competency treatment in Napa State Hospital since the effective date of Senate Bill 1187. We will remand this matter for the trial court to determine the number of credits due to defendant beginning on January 1, 2019 through the end of his commitment at Napa State Hospital.

**D. Section 2933.1**

In their appellate brief, the People contended the amount of credit defendant was awarded should be reduced pursuant to section 2933.1. During oral argument, however, we were notified that the People have abandoned that issue. Accordingly, we will not address it further.

DISPOSITION

The matter is remanded for resentencing. The trial court is instructed to recalculate defendant's credits, and to award conduct credits pursuant to section 4019 for the time defendant spent in Napa State Hospital beginning on January 1, 2019. The court should prepare an amended abstract and forward it to the Department of Corrections. In all other respects, the judgment is affirmed.

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P. J.

_____
Petrou, J.

A162703

**People v. Yang (A162703)**

Trial Court:        Del Norte Superior Court

Trial Judge:        Hon. Robert F. Cochran

Attorneys:

David A. Kaiser, under appointment by Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and Ashley Harlan, Deputy Attorneys General, for Plaintiff and Respondent.